**CENTENNIAL INSURANCE COMPANY,**
Plaintiff-Appellant,

v.

**APPLIED HEALTH CARE SYSTEMS, INC., and Minicomputer Technology, Inc., Defendants-Appellees.**

No. 83–1052.

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1983.

Decided July 5, 1983.

Sandra Young, Purcell & Wardrope, Chtd., Chicago, Ill., for plaintiff-appellant.

Edna Selan Epstein, Sidley & Austin, Chicago, Ill., for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and DUMBAULD, Senior District Judge.*

BAUER, Circuit Judge.

The genesis of the case before us lies in an action brought by Applied Health Care Systems, Inc. (Applied Health) against Minicomputer Technology, Inc. (MCT). In that case, which is pending before the United States District Court for the Northern District of Illinois, Applied Health is seeking to recover damages alleged to stem from MCT's introduction of a faulty controller[1] into Applied Health's data processing system. *Applied Health Care Systems, Inc. v. Minicomputer Technology, Inc.*, No. 81 C 6546 (N.D.Ill., filed Nov. 20, 1981). Centennial Insurance Co. (Centennial), the plaintiff-appellant on this appeal, is the issuer of a comprehensive general liability insurance policy covering Defendant-appellee MCT.

Centennial brought the action underlying this appeal in an effort to clarify its own obligations under that insurance policy. Specifically, Centennial sought a declaratory judgment that it was under no duty to either defend or indemnify MCT in the action brought by Applied Health. MCT counterclaimed for declarative relief ordering Centennial to defend and indemnify MCT in the Applied Health action.

Both parties moved for summary judgment. The district judge held that the insurance policy at issue obligated Centennial to defend the Applied Health action. *Centennial Insurance Co. v. Applied Health Care Systems, Inc. and Minicomputer Technology, Inc.*, No. 82 C 4108 (N.D.Ill. Dec. 13, 1982). Accordingly, she granted MCT's motion for summary judgment as to that issue.[2] *Id.* We affirm.

I. BACKGROUND

█ Ultimately, Centennial's duty to defend the Applied Health action hinges on

---

* The Honorable Edward Dumbauld, Senior Judge of the United States District Court for the Western District of Pennsylvania, is sitting by designation.

1. A controller acts as the "electronic switchboard" in a data processing system. The controller reads information from the magnetic disc into the computer for processing. The controller also serves as the mechanism through which information typed into the keyboard is transmitted to and stored on the magnetic disc.

2. The district judge also held that Centennial was obligated to indemnify MCT for all damages, including economic losses, which MCT should become legally obligated to pay to Applied Health because of physical injury to or destruction of tangible property. Moreover, the district judge held that Centennial was obligated to indemnify MCT for all damages, including economic losses, which MCT should become legally obligated to pay on the basis that Applied Health had sustained a loss of use of tangible property not physically injured or destroyed, except to the extent that Exclusion (m) of the policy applies.

whether any of the allegations contained in Applied Health's complaint state facts even potentially within the coverage of the insurance policy. *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).[3] Thus, an understanding of the Applied Health action is necessary to our consideration of Centennial's duty to defend that action.

From 1975 until 1981, Applied Health provided a computerized data processing service to facilities providing drug-related patient care in the Chicago area. The facilities subscribing to this service used Applied Health's data processing system for storage and retrieval of patient care and billing records.

Pursuant to an oral contract with Applied Health, MCT delivered and installed four controllers in Applied Health's data processing system in April of 1980. Applied Health now alleges that "the controllers were defective in that each of them had a wiring-connection defect that caused them to consistently malfunction through the random loss of customer billing and patient care information that had been stored in the system." Complaint, *Applied Health Care Systems, Inc. v. Minicomputer Technology, Inc.,* No. 81 C 6546 (N.D.Ill., filed Nov. 20, 1981). Applied Health further alleges that the defective controllers prevented the company from adequately serving its clients and that the ultimate result was the termination of Applied Health's business. *Id.* These allegations form the basis for the Applied Health action against MCT.[4]

MCT is a California corporation engaged in the manufacture, marketing, and sale of computer hardware and software products. MCT tendered its defense in the Applied Health action to Centennial under the comprehensive general liability policy issued by Centennial to MCT. Centennial disclaimed coverage for the losses allegedly sustained by Applied Health. Following MCT's demand that Centennial defend and indemnify MCT, Centennial brought this action for declaratory relief.

## II. ANALYSIS

### A. The Relevant Policy Provisions

The policy issued by Centennial was in full force and effect from February 1, 1980 until its cancellation on October 10, 1981. Under that policy, Centennial had both the right and the duty to defend MCT in any action seeking damages on account of property damage. The relevant clause provides that Centennial "shall have the right and duty to defend any suit against [MCT] seeking damages on account of such bodily injury or property damage, even if any of the allegations of this suit are groundless, false or fraudulent. . . ."

Property damage is defined by the policy as:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or

We believe that whether there was, in fact, tangible property damage, what the appropriate measure of damages should be, and the extent to which Centennial is liable to MCT on the insurance policy depend on fact questions to be adjudicated in the Applied Health action; thus, they are not ripe for review. Accordingly, we expressly limit our consideration to the question of Centennial's duty to defend the Applied Health action.

3. The substantive law applicable in this diversity action is that of California, the state where the insurance policy was executed and delivered. *Centennial Ins. Co. v. Applied Health*

*Care Sys., Inc.,* No. 82 C 4108 (N.D.Ill. Dec. 13, 1982).

4. Applied Health's complaint sought recovery under several theories: strict liability, negligence, breach of warranty, breach of contract, and fraud. Pursuant to MCT's motion to dismiss, the district judge dismissed the strict liability and negligence counts, as well as the allegation of false representations. *Applied Health Care Sys., Inc. v. Minicomputer Tech., Inc.,* No. 81 C 6546 (N.D.Ill. May 7, 1982).

destroyed provided such loss of use is caused by an occurrence during the policy period.

The policy definition of "occurrence" is "an accident, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured."

## B. The Duty to Defend

Centennial advances two arguments in support of its contention that it has no obligation to defend the Applied Health action. First, Centennial asserts that any injury suffered by Applied Health as a result of the faulty controllers is not "property damage" within the coverage of the policy. Second, Centennial asserts that even if Applied Health did, in fact, sustain property damage, such damage would be excluded from coverage by the effect of Exclusion (m).[5] Both of these arguments are without merit.

Centennial's first argument is premised on its contention that Applied Health will fail to establish "property damage" as that term is defined by the policy. Since the failure to establish any injury covered by the policy would exonerate Centennial of any duty to indemnify MCT, Centennial urges that it has no obligation to defend MCT. The obligation to defend, however, is independent of the obligation to indemnify.[6] Gray, 419 P.2d at 175.

Moreover, the insurer's duty to defend may extend far beyond any ultimate duty to indemnify the insured. Insurers not uncommonly recognize this obligation and defend under a reservation of rights. Under California law the insurer is obligated to defend a suit that *potentially* seeks damages within the coverage of a policy. Id. at 176. Accord Wint v. Fidelity & Casualty Company, 9 Cal.3d 257, 107 Cal.Rptr. 175, 507 P.2d 1383 (Cal.1973). Thus, Centennial must defend the Applied Health action if any of the allegations in that action state facts even potentially within the coverage of MCT's policy. To determine whether there is a duty to defend, "courts do not examine only the pleaded word but the potential liability created by the suit." Gray, 419 P.2d at 176.

A fair reading of the complaint in the Applied Health action clearly raises the spectre that liability for property damage may ensue. Whether Applied Health will prove such property damage at trial remains to be seen; in any event that issue is of no moment here.[7] Accordingly, Centennial's argument that Applied Health has suffered no property damage is inapt and cannot exonerate Centennial of the duty to defend.

Centennial's argument with respect to the exclusionary clause of the policy also

---

**5.** This exclusion provides that the insurance shall not extend:

> (m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
> (1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
> (2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured[.]

**6.** The California Supreme Court, in *Gray v. Zurich Insurance Company,* explained the rationale for treating these duties independently.

> Although insurers have often insisted that the duty [to defend] arises only if the insurer

is bound to indemnify the insured, this very contention creates a dilemma. No one can determine whether the third party suit does or does not fall within the indemnification coverage of the policy until that suit is resolved .... The carrier's obligation to indemnify inevitably will not be defined until the adjudication of the very action which it should have defended.

65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 173 (1966).

**7.** The district court opinion and the parties' briefs on appeal devote considerable attention to whether information stored in a data processing system may be fairly characterized as tangible property. The resolution of this question, whatever its intrinsic interest, is not necessary to the decision in this case. Accordingly, we decline to address it.

must fail. Under California law an insurer bears the obligation to defend where the policy reasonably leads the insured to expect a defense. *St. Paul Fire & Marine Insurance Co. v. Weiner,* 606 F.2d 864, 868 (9th Cir.1979). Even an apparent exclusion of coverage cannot defeat that duty. Thus, in *Gray v. Zurich Insurance Company* the California Supreme Court held that the insurer was obligated to defend an intentional tort case even though the comprehensive personal liability policy expressly excluded intentional torts from coverage. 419 P.2d at 174.

The policy at issue in *Gray* contained a duty to defend clause identical to that contained in the MCT policy. Speaking to the obligation created by that clause, the court stated:

> the very first paragraph as to coverage ... provides that "the company shall defend any such suit against the insured alleging such bodily injury" although the allegations of the suit are groundless, false or fraudulent. This language, in its broad sweep, would lead the insured reasonably to expect defense of *any* suit regardless of merit or cause. The relation of the exclusionary clause to this basic promise is anything but clear. The basic promise would support the insured's reasonable expectation that he had bought the rendition of legal services to defend a suit for bodily injury which alleged he had caused it, negligently, nonintentionally, intentionally or in any other manner.

419 P.2d at 174.

■ The same reasonable expectation of a defense arises under the comprehensive general liability policy issued by Centennial to MCT. Centennial cannot escape its obligation by a mere assertion that any damage

Applied Health may prove at trial will fall outside the policy coverage. The extent, if any, to which the exclusionary clause exonerates Centennial of its duty *to indemnify* will not be defined until the Applied Health action has been adjudicated. Regardless of the effect of the clause at that time, the exclusion may not be invoked to avoid the duty *to defend* that action.[8]

### III.

For the foregoing reasons we reject Centennial's contention that it has no obligation to defend MCT in the Applied Health action. To that extent,[9] the judgment of the district court is affirmed. To the extent that the district court's judgment reaches the question of duty to indemnify, it is vacated.

The parties are to bear their own costs in this appeal.

---

**8.** "If the insurance company wants to protect itself in this type of a situation, it should be clearly stated that the exclusion clause applies to both the duty to pay *and* the duty to defend." *United States v. United States Fidelity & Guar. Co.,* 601 F.2d 1136 (10th Cir.1979).

**9.** As noted in footnote 2 *supra,* the district court opinion concerned itself with issues other than Centennial's duty to defend. We reiterate that any consideration of these issues is premature and unnecessary to our disposition of this appeal.