MARYLAND CASUALTY COMPANY, Plaintiff-Appellant, *v.* CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 83—1474

Opinion filed June 26, 1984.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Kevin R. Sido, and Joshua G. Vincent, of counsel), for appellant.

Ronald J. Cuchna and John S. Bishof, Jr., both of Chicago, for appellee Chicago and North Western Transportation Company.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Maryland Casualty Co. (Maryland) appeals from a summary judgment granted to defendant Chicago and North Western Transportation Co. (C&NW) in a declaratory judgment action, whereby Maryland was found obligated to both defend and indemnify C&NW in a separate negligence action brought against C&NW by an employee of C&NW's lessee, Demos News, Inc. (Demos).

This appeal raises as issues whether: (1) Maryland has a duty to defend C&NW in the negligence action under the terms of its general liability insurance policy issued to Demos; (2) Maryland has a duty to defend C&NW under the terms of an excess coverage policy issued to Demos; and (3) the circuit court erred by prematurely determining

Maryland's duty to indemnify C&NW.

Under a five-year lease dated July 1, 1978, Demos leased from C&NW three separate newsstand sites and other storage and office areas located in C&NW's Chicago passenger terminal. Demos obtained from Maryland a comprehensive general liability policy (CGL), revised effective March 1, 1979, to include C&NW as "additional insured." The excess coverage policy, called "Checkmate," named only Demos as the insured.

Shortly after 5 a.m. on October 19, 1979, a Demos newsstand employee arrived at the passenger terminal to begin work. When she got to about 10 feet from her employer's office door, a man grabbed her around the neck from behind and led her back to a stairwell, where they both fell down the stairs. She was knocked unconscious. She regained consciousness and discovered that she was naked from the waist down, had been raped, and was covered with blood. The victim suffered lacerations of the chin and lip, a fractured nose and cheekbone, numerous bruises and numbness in her teeth. She experienced deafness in her left ear for a period of six months. Her attacker was never apprehended.

The victim subsequently initiated an action against C&NW, alleging that her attack and resulting injuries had been proximately caused by C&NW's negligence in controlling and maintaining the passenger terminal. C&NW tendered the defense of this suit to Maryland, which assumed the defense under a reservation of rights.

Maryland initiated the instant declaratory judgment action on April 26, 1982, seeking a determination of its rights and obligations with respect to the defense and indemnification of C&NW in the underlying action. Maryland filed a motion for summary judgment followed by C&NW's cross-motion for the same relief. On March 1, 1983, the circuit court granted C&NW's and denied Maryland's motion, "finding the *** [CGL] policy covers the defense and potential indemnification" of C&NW as to the underlying action. Maryland's motion for rehearing and stay were denied, and this appeal followed.

## I

■ Maryland contends that the provisions of the CGL policy preclude any defense obligations to C&NW. Where the complaint alleges facts suggesting that coverage potentially exists, the duty to defend arises. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24.) The complaint must be liberally construed, and all doubts resolved in favor of the insured. (*Sentry Insurance Co. v. S&L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 689, 414 N.E.2d 1218.)

Only where it is clearly apparent on the face of the complaint that the claim is beyond policy coverage can the insurer justifiably refuse to defend. (*La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928.) The victim's complaint here attributes no culpability to Demos nor mentions that plaintiff's injury was related to her employment, but alleges only the C&NW's negligence proximately caused her injuries. Maryland argues that these facts alone should preclude any obligation it might have to defend C&NW. C&NW, however, is an additional insured under the CGL policy and claims coverage for the entire terminal. Therefore, a determination of Maryland's duty to defend C&NW necessitates a closer examination of the CGL policy.

■■ ■ Insurance policy terms must be read according to their plain and ordinary meanings; any ambiguities arising when several provisions of the policy are read together will be construed in favor of the insured. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4-5, 429 N.E.2d 1203; *Sentry Insurance Co. v. S&L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 691.) The intent of the parties to an insurance contract is ascertained by considering the policy itself as well as the circumstances surrounding its issuance, such as the situation of the parties and the purpose for which the policy was obtained. (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378, 400 N.E.2d 921; *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336, 312 N.E.2d 247.) Here, the CGL policy named Demos as the insured and C&NW as an additional insured, "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the named insured ***." The premises designated are "500 W. Madison." The policy limits coverage to "that part" of the premises leased to Demos; C&NW's argument that the policy expressly covers the entire passenger terminal therefore must be rejected.

C&NW also relies on an endorsement (G222) to the policy which defines "insured premises" to include "the ways immediately adjoining on land." This provision appears in the "additional definitions" portion of the policy designated "premises medical payments coverage," for which the limit of liability is $1,000; by contrast, the "additional definitions" section of the "personal injury and advertising injury liability coverage," for which the liability limit is $300,000, contains no such language. Clearly, the subject definition applies only to coverage for specific medical expenses. At the hearing on the cross-motions for summary judgment, the circuit court requested this

language be read into the record. In ruling on the motions, the court stated: "Specifically, I find the occurrence in question took place 'on the ways immediately adjoining the land' leased to [Demos] ***." The principal basis for the circuit court's decision is therefore misplaced.

■ The propriety of granting summary judgment to C&NW, in our opinion, turns on whether the attack on the victim arose "out of the ownership, maintenance or use" of the designated leased premises. Maryland maintains that the attack, occurring before the victim had begun work, did not arise from her employer's use of the premises but from her mere presence in the terminal, which was open to the public. The phrase "arising out of" is both broad and vague, and must be liberally construed in favor of the insured; accordingly, "but for" causation, not necessarily proximate causation, satisfies this language. (*Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 1069, 416 N.E.2d 758, quoting *Aetna Casualty & Surety Co. v. Ocean Accident & Guarantee Corp.* (3d Cir. 1967), 386 F.2d 413, 415.) "Arising out of" has been held to mean "originating from," "having its origin in," "growing out of" and "flowing from." *Western Casualty & Surety Co. v. Branon* (E.D. Ill. 1979), 463 F. Supp. 1208, 1210.

The parties each cite cases construing the "arising out of" language in analogous contexts. Maryland relies principally upon *National Hills Shopping Center, Inc. v. Liberty Mutual Insurance Co.* (5th Cir. 1977), 551 F.2d 655, decided under Georgia law; however, that policy, unlike the one here, contained a clause excluding the particular losses suffered from coverage. (551 F.2d 655, 658.) Maryland also cites cases restricting the geographic scope of liability arising from the use of certain insured premises. (*Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873; *United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 429 N.E.2d 1203.) The instant leased premises, however, include three separate newsstand sites as well as separate office and storage areas, all within the confines of the "designated premises," the passenger terminal. It is foreseeable, therefore, that employees of Demos would necessarily and customarily use the nonleased portions of the terminal in order to go about their employer's business. Extending coverage here to areas of the terminal nearby Demos' leased premises in the terminal would not create potentially unlimited geographic liability.

C&NW cites *Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 416 N.E.2d 758, but there the named insured, lessee trucking company, provided various services to

the additional insured, lessor owner of certain railroad yards, and required its employees to work outside the confines of the leased premises; moreover, the trucking company was a wholly owned subsidiary of the yard owner, which, by virtue of its financial control of the named insured, was provided additional coverage under the policy. 92 Ill. App. 3d 1066, 1069.

None of the cases cited thus involved a situation closely paralleling that presented here: injuries caused by the alleged negligence of an additional insured under a liability policy and sustained by the employee of the named insured, immediately outside the leased premises as she was about to begin her daily employment. Nevertheless, by construing the policy liberally in favor of the insured—a procedure necessitated by the ambiguity of the "arising out of" language—the instant injuries appear to have arisen from the operation and use of the leased premises, since they would not have been sustained "but for" the victim's employment on those premises. She was about to commence her employer's operation when she was assaulted. She, in fact, was holding keys to open the office. Her presence in the terminal at that hour was not a fortuitous happenstance, but a regular and foreseeable occurrence. The policy, therefore, reasonably must be construed to cover any risks attendant upon her presence there resulting from C&NW's negligence and thereby activates Maryland's duty to defend C&NW.

Finally, although generally considered an unambiguous word referring to a fixed situs, "premises" has also been held to include "private approaches and other areas necessary or incidental to an insured's operations." *Allstate Insurance Co. v. Gutenkauf* (1981), 103 Ill. App. 3d 889, 894, 431 N.E.2d 1282. See also *General Casualty Co. of Illinois v. Olsen* (1977), 56 Ill. App. 3d 986, 372 N.E.2d 846; *Davis v. Sheehan* (1976), 43 Ill. App. 3d 449, 357 N.E.2d 690. See generally 7A J. Appleman, Insurance Law & Practice, sec. 4500.02, at 191-92 (Berdal ed. 1979).

The construction of an insurance policy is a matter of law. Summary judgment is an appropriate disposition where such construction is at issue, as here. (*State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1063, 419 N.E.2d 601.) The circuit court did not err in granting summary judgment to C&NW on the basis of the provisions of the CGL policy.

## II

Maryland next argues that the excess coverage Checkmate policy does not cover C&NW for its liability in the instant occurrence.

That policy provides in part, under section 3.1, that Maryland "will indemnify the Insured [Demos] for ultimate net loss in excess of the retained limit which the Insured \*\*\* shall become legally obligated to pay as damages because of Personal Injury Liability \*\*\*." The retained limit in the instant policy under section 1.4 is $10,000. Although the Checkmate policy does not designate an additional insured, section 4.2(d) in relevant part extends coverage to "any additional Insured included in the underlying insurance but only to the extent that insurance is provided to such additional Insured thereunder." C&NW is such an additional insured in the CGL policy. Coverage under this provision, however, attaches only after the predetermined $10,000 retained limit has been exhausted. (*Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 764, 442 N.E.2d 1362; Checkmate Policy sec. 2.12.) Under the foregoing, C&NW must expend an amount in defense or settlement of the case equal to the retained limit before the excess insurance provided by Checkmate can be applied, assuming Maryland is not able later to assert a defense to its indemnification of C&NW.

### III

■■ ■ Maryland lastly characterizes as premature the circuit court's ruling that Maryland must ultimately indemnify C&NW.[1] An insurer's duty to defend is broader than its duty to pay. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 451, 430 N.E.2d 1079.) The duty to defend is determined by the allegations of the complaint; however, the duty to pay "will not be defined until the adjudication of the very action which it [the insurer] should have defended." (*Centennial Insurance Co. v. Applied Health Care Systems, Inc.* (7th Cir. 1983), 710 F.2d 1288, 1291 n.6, quoting *Gray v. Zurich Insurance Co.* (1966), 65 Cal. 2d 263, 272, 419 P.2d 168, 173, 54 Cal. Rptr. 104, 109.) A declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not then ripe for adjudication. (*Solo Cup Co. v. Federal Insurance Co.* (7th Cir. 1980), 619 F.2d 1178, 1189. See also *Centennial Insurance Co. v. Applied Health Care Systems, Inc.* (7th Cir. 1983), 710 F.2d 1288, 1292, n.9 (applying California law).) Our supreme court, in *Murphy v. Urso* (1981), 88 Ill.

---

[1]Although the order granting summary judgment refers to "potential indemnification," the court's oral ruling refers to "ultimately indemnify" and "ultimately pay." For purposes of certainty and clarity, the order will be treated here as imposing upon Maryland the "ultimate" duty to indemnify.

2d 444, 455-57, has carved out an exception for declaratory judgment actions brought to determine insurance coverage where the issues are separable from those in the underlying action, the primary concern being that an untimely determination in the declaratory judgment action could subsequently prejudice a party in the underlying action through application of collateral estoppel. In the case *sub judice*, circumstances could arise which would permit Maryland to contest its duty to pay. The circuit court's finding that Maryland must indemnify C&NW could, through collateral estoppel, prevent Maryland from raising a defense to indemnification in such a proceeding. To avoid any possible prejudice to Maryland through the operation of collateral estoppel, the circuit court's finding as to indemnification must be vacated, without prejudice to the ultimate rights of the parties should any question arise with respect to them.

Accordingly, we affirm the finding as to Maryland's duty to defend C&NW under its comprehensive general liability and excess coverage policies to the extent indicated in this opinion; and reverse and vacate as to Maryland's present duty to indemnify C&NW.

Affirmed in part; reversed and vacated in part.

STAMOS and PERLIN, JJ., concur.