# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2330
No. 02-2489

_____

SFH, Inc.,

    Plaintiff - Appellant/
Cross-Appellee,

    v.

Millard Refrigerated Services, Inc.,

    Defendant - Appellee,

Larsen Realty Company,

    Defendant - Appellee/
Cross-Appellant.

    Appeals from the United States
District Court for the
District of Nebraska.

_____

No. 02-3442

_____

The Travelers Indemnity Company
of Illinois,

    Plaintiff - Appellant,

    v.

Millard Refrigerated Services, Inc.,

    Defendant - Appellee.

_____

Submitted: March 10, 2003

Filed: August 12, 2003
_____

Before McMILLIAN, FAGG, and LOKEN,[*] Circuit Judges.
_____

LOKEN, Chief Judge.

We have consolidated these appeals in two diversity actions brought to establish the parties' respective liabilities for a January 1998 fire that destroyed the Signature Foods processing business of SFH, Inc. ("Signature"). The fire started in the portion of an Omaha warehouse that Signature leased from Millard Refrigerated Services, Inc. ("Millard"). Millard managed the warehouse under an agreement with the building's owner, Larsen Realty Co. ("Larsen").

The lease required Signature to maintain not less than $1,000,000 of comprehensive general liability (CGL) insurance and to include Millard as an additional insured. Signature purchased a $1,000,000 CGL policy from The Travelers Indemnity Co. ("Travelers"). The policy included an additional insured endorsement for "Managers or Lessors of Premises." Signature also purchased a $25,000,000 excess liability policy from Travelers. After the fire, Travelers indemnified Signature under both policies for $9,861,143 of Signature's losses. The amount of loss covered by the Travelers policies is not in dispute.

Signature filed the first suit in Nebraska state court to recover damages for Millard's alleged gross negligence in failing to properly maintain the warehouse

_____

[*]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

-2-

sprinkler system.[1]  Millard removed the case to federal court.  Signature filed an amended complaint adding Larsen and a third defendant who later settled by paying Signature $750,000.  Meanwhile, Millard demanded that Travelers defend Millard as an additional insured under the Travelers policies.  Travelers refused and filed the second action for a declaratory judgment that it need not defend or indemnify Millard.  The two actions proceeded separately before different district judges.

In the first action, after a trial of Signature's claims, the jury found that the fire was caused by Millard's gross negligence and by Larsen's negligence.  The jury awarded Signature damages of $11,962,753, assigning seventy percent of the fault to Millard and thirty percent to Larsen.  The district court[2] reduced the award by the $750,000 Signature received in the settlement and entered judgment against Millard and Larsen in the amount of $11,212,573.  Following this ruling, the district court in the declaratory judgment action[3] granted summary judgment to Millard, concluding that Travelers had a duty to defend *and* indemnify Millard against Signature's lawsuit.  The district court in the first action then reduced the judgment in favor of Signature by (1) the $9,861,143 Signature received from Travelers for the insured losses, and (2) the $200,000 Signature received from a post-fire salvage sale.  The court denied Signature's motion for prejudgment interest and entered an Amended Judgment of $1,151,430, the amount of Signature's uninsured losses.

---

[1]A few days before the fire, a Millard employee turned off the water to the sprinkler system, so the sprinklers in Signature's portion of the premises did not activate when the fire began.

[2]The HONORABLE LYLE E. STROM, United States District Judge for the District of Nebraska.

[3]The HONORABLE JOSEPH F. BATAILLON, United States District Judge for the District of Nebraska.

In the first action, Signature appeals the district court's decision to reduce the judgment by the $9,861,143 paid by Travelers, raising distinct issues as to Millard and Larsen. Signature also appeals the reduction for the amount recovered in the post-fire sale and the denial of prejudgment interest. Larsen cross-appeals the judgment that it was negligent. In the declaratory judgment action, Travelers appeals the district court's conclusion that Travelers must defend and indemnify Millard as an additional insured under the liability policies. We will first discuss the appeal by Travelers because our decision that Millard has coverage as an additional insured makes it unnecessary to address a number of issues raised by the cross-appeals in the Signature case. In the end, we affirm both district courts in all respects.

## I. The Travelers Appeal.

**A. The Duty To Indemnify.** On appeal, Travelers first argues the district court erred in concluding that Travelers must indemnify Millard under both the CGL and excess policies for Signature's insured losses. This contention requires a somewhat different analysis for each policy. The law of Nebraska controls our analysis and requires that we construe the policies as contracts, giving effect to the parties' intentions at the time the contract was made. Home Ins. Co. v. Aetna Ins. Co., 236 F.3d 927, 929 (8th Cir. 2001).

**1. The CGL Policy.** The lease agreement between Millard and Signature required Signature to obtain CGL insurance protecting both Signature and Millard "as their interests may appear . . . in an amount not less than One Million Dollars . . . in a form and issued by a company or companies satisfactory to [Millard]." Consistent with that obligation, Signature purchased a CGL policy from Travelers that included an endorsement defining as an Additional Insured "[a]ny manager or lessor of premises with whom you have agreed in a written contract, executed prior to loss to name as an additional insured . . . . but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you." Millard

was a "manager or lessor of premises" that Signature had agreed "to name as an additional insured." If the CGL policy therefore covered Millard's liability for this loss, as the district court concluded, the result seems at first blush anomalous -- Travelers must indemnify Millard, an *additional* insured, for loss its negligence caused Signature, the *named* insured. But the result is not anomalous when considered in light of paragraph 14 of the lease, which provided in relevant part:

> WAIVER OF RIGHTS IN INSURED LOSSES. [Millard] and [Signature] agree that neither shall be liable to the other for damages to the premises or to any of the contents of the premises . . . by perils insured against by the party owning such damaged property . . . . Each party hereto shall provide the other party with documentary evidence of the concurrence of their respective insurance carriers with the provisions of this clause.

In other words, Millard and Signature as landlord and tenant agreed that, in the event of property damage, each would look to its own insurance rather than to the other party to the lease, and Signature agreed to obtain Travelers's concurrence in that contractual arrangement.[4]

Though conceding Millard as lessor was an additional insured, Travelers argues that the loss was not covered because Millard's liability did not arise out of ownership, maintenance, or use of the leased premises. Like the district court, we disagree. The Nebraska courts have not interpreted this phrase in a CGL policy. But the Nebraska Supreme Court has broadly construed "arising out of" language in an automobile liability policy to require only "some causal relationship between the injury and the use of the vehicle." Farmers Union Coop. Ins. Co. v. Allied Prop. & Cas. Ins. Co., 569 N.W.2d 436, 439 (Neb. 1997). Similarly, courts in other

---

[4]An additional insured's own negligence is covered under this type of additional insured endorsement. See Marathon Ashland Pipe Line LLC v. Md. Cas. Co., 243 F.3d 1232, 1240 (10th Cir. 2001), and cases cited.

jurisdictions have broadly construed "arising out of" language in commercial liability policies. See Colony Ins. Co. v. Pinewoods Enters., Inc., 29 F. Supp. 2d 1079, 1083 (E.D. Mo. 1998) ("[A] simple causal relationship must exist between the accident or injury and the activity of the insured."); Hormel Foods Corp. v. Northbrook Prop. & Cas. Ins. Co., 938 F. Supp. 555, 557 (D. Minn. 1996) ("'[B]ut for' causation satisfies the requirements of an insurance policy which specifies that only liabilities 'arising out of the use' are covered."); Maryland Cas. Co. v. Chicago & N. W. Transp. Co., 466 N.E.2d 1091, 1094 (Ill. App. 1984). In construing an insurance policy, the Supreme Court of Nebraska is guided "by judicial opinions rendered by other courts which have considered the meaning of these terms." Katskee v. Blue Cross/Blue Shield, 515 N.W.2d 645, 649-50 (Neb. 1994).

Construing the "arising out of" language broadly, we conclude that Millard's liability arose out of its maintenance of the leased premises. The fire started within the portion of the warehouse leased by Signature and injured Signature's property located in the leased premises. Signature's loss was caused, or significantly increased, by the conduct of the Millard employee who shut off the water to the building's sprinkler system. As the district court stated, "the deactivation of the sprinkler system is related to and causally connected to [Millard's] maintenance of the sprinkler system located within the confines of the premises leased to Signature." Thus, although the shut-off valve was located in another part of the warehouse, this case is distinguishable from those on which Travelers relies, where the landlord was denied additional insured coverage for liability arising from incidents that occurred entirely outside the leased premises, such as U.S. Fid. & Guar. v. Drazic, 877 S.W.2d 140, 143 (Mo. App. 1994). There was coverage under the Travelers CGL policy.

**2. The Excess Policy.** The excess policy did not contain an additional insured endorsement. Rather, it defined the insured to include "[a]ny other person or organization insured under any policy of the 'underlying insurance.'" The Travelers CGL policy was "underlying insurance." See Maryland Cas., 466 N.E.2d at 1095.

-6-

Accordingly, Millard was an additional insured under the excess policy. However, an endorsement to the excess policy stated that its coverage did not apply to "property you own, rent or occupy [or] property in your care, custody or control." Travelers argues that this endorsement excludes Millard's coverage claim because the policy expressly defines the word "you" as the named insured, Signature, and Millard seeks coverage for damage to property owned and controlled by Signature.[5]

The most relevant case the parties have brought to our attention supports the district court's decision. In Wyner v. North American Specialty Insurance Co., 78 F.3d 752, 756 (1st Cir. 1996), the landlord as an additional insured sought coverage under the tenant's CGL policy for damage *to the landlord's property*. The First Circuit affirmed the denial of coverage, construing the word "you" in the exclusion for property "you own, rent or occupy" to mean the property of the party seeking coverage, whether that party was a named insured or an additional insured. This construction was necessary, concluded the court, because the purpose of an additional insured provision is to extend the policy coverage to others, "not to change the nature of the coverage nor to change declarations nor to remove exclusions." 78 F.3d at 756 (quotation omitted). This reasoning was adopted by the court in Marathon Ashland Pipe Line LLC v. Maryland Casualty Co., 243 F.3d 1232, 1241 (10th Cir. 2001).

On appeal, Travelers seeks to turn this principle to its advantage, arguing the district court "extended the policy coverage" by granting Millard as additional insured coverage for damage to the named insured's property. We disagree. The purpose of the exclusion is to deny coverage under a liability policy for damage to the insured's own property. Millard has coverage as an additional insured. The issue is whether the exclusion bars coverage for damage to its property or to Signature's

---

[5]In its reply brief, Travelers argued for the first time that coverage was excluded because *Millard* controlled the property of its tenant, Signature. The argument strikes us as factually unsound. In any event, it was not timely raised.

property. Granting coverage for damage to the additional insured's own property would turn the liability policy into a form of first-party insurance. That would truly be a change or extension in the policy's coverage. On the other hand, construing the exclusion so that the additional insured's coverage is limited to damage caused to another person's property, including the named insured's property, is consistent with the purpose of the exclusion. Thus, we agree with the district court that Millard's liability to Signature is covered by the excess policy as well.[6]

**B. The Duty to Defend.** Travelers also appealed the district court's decision to award damages for Travelers's refusal to defend Millard against Signature's damage claims in the underlying action. However, Travelers concedes that "the question whether Travelers had a duty to defend Millard against Signature Foods' lawsuit hinges on whether Millard is entitled to indemnification under Signature Foods' CGL and excess policies." Thus, our conclusion that Travelers must indemnify Millard under both the CGL and excess policies means that the award of damages for breach of the duty to defend must also be affirmed.

## II. Signature's Appeal.

**A. The Claim Against Millard for Insured Losses.** Signature concedes that it may not recover its $9,861,143 of insured losses from Millard if Travelers's CGL

---

[6]At a minimum, we conclude that the meaning of the term "you" in this exclusion is ambiguous. Under Nebraska law, a contract is ambiguous "when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." Volquardson v. Hartford Ins. Co., 647 N.W.2d 599, 604 (Neb. 2002). If the policy is not ambiguous, the court accords its terms "their plain and ordinary meaning as the ordinary or reasonable person would understand them." If the policy is ambiguous, "then the court may employ rules of construction and look beyond the language of the policy to ascertain the intention of the parties," and may use the general principle of construction "that an ambiguous policy will be construed in favor of the insured." Katskee, 515 N.W.2d at 649.

and excess policies provided coverage for those losses to Millard as an additional insured. The concession is proper. When Travelers paid Signature's insured losses, it became subrogated to this portion of Signature's claims. "Although an insurance company has the right to recover against a wrongdoer whose negligence has subjected the insurance company to liability, no right of subrogation can arise in favor of an insurer against its own insured." Jindra v. Clayton, 529 N.W.2d 523, 526 (Neb. 1995). Thus, we need not consider whether the district court in the first action acted contrary to Nebraska public policy in ruling that paragraph 14 of the lease contractually limited Millard's liability to Signature for Millard's gross negligence.

**B. The Claim Against Larsen for Insured Losses.** The district court found, and the parties agree, that Larsen was Millard's undisclosed principal on the lease with Signature. Therefore, Signature argues, Larsen is liable for Signature's insured losses, even if Millard as Travelers's additional insured is not, because (1) Larsen was not an additional insured so it may be liable in Travelers's subrogation action; and (2) Larsen is limited to Millard's contractual defenses so, as a matter of Nebraska public policy, Millard's gross negligence precludes Larsen from relying on paragraph 14 of the lease as a contractual defense to liability. Like Millard, Larson contests Signature's interpretation of Nebraska public policy. In addition, Larsen argues that, as Millard's undisclosed principal, it is entitled to the same defenses contained in the lease as Millard. See Lenart v. Ragsdale, 385 N.W.2d 282, 284 (Mich. App. 1986); RESTATEMENT (SECOND) OF AGENCY §§ 186, 203 (1958). Therefore, as Larsen's liability is based upon ordinary negligence, not gross negligence, Signature's claim for insured losses is barred by paragraph 14 of the lease. See Bedrosky v. Hiner, 430 N.W.2d 535, 540-41 (Neb. 1988) (holding a lease provision exempting a lessor from liability for ordinary negligence was not contrary to public policy).[7]

---

[7]Larsen further argues that Signature may not recover even its uninsured fire loss because Signature in paragraph 14 waived "any and all right of recovery from Lessor for loss caused by the perils of fire." Larsen first raised this issue in its post-

The public policy issue, and the issue whether Larsen's defense under paragraph 14 is limited by Millard's gross negligence, are novel and interesting, but we need not address them. Signature concedes that Larsen as owner of the warehouse was the undisclosed principal of Millard. Therefore, in the words of the district court, Larsen "is bound by the terms of the lease and can assert any defenses or immunities that arise out of the lease." The additional insured endorsement in the Travelers CGL policy applies to "[a]ny manager or lessor with whom [Signature] agreed . . . to name as an additional insured." Thus, Larsen as well as Millard was an additional insured under the CGL policy. As we have explained, that made Larsen an additional insured under the excess policy as well, so Signature is barred from asserting a subrogation claim for its insured losses against both Larsen and Millard.[8]

**C. The Claim for Salvage Sale Proceeds.** The district court instructed the jury, without objection, that the proper measure of Signature's damages "is the market value of the business before the fire . . . less any sums plaintiff has received for the sale of its tangible or intangible assets following the fire and plus any mitigation expenses." When the jury returned its verdict, the court asked the foreman whether the damage award included a deduction for the $200,000 post-fire salvage sale proceeds. The foreman responded, "We believed that to be in the calculation." The award of $11,962,573 was precisely the market value of Signature's business as estimated by Signature's expert. Accordingly, when defendants satisfied the court that the expert's valuation did *not* include the salvage sale proceeds, the court reduced the judgment by the amount of those proceeds.

---

verdict motion for judgment as a matter of law. Accordingly, it was not properly preserved for appeal. See Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1057 (8th Cir. 2002).

[8]Larsen cross-appealed the district court's instructions and the sufficiency of the evidence supporting the jury's finding that it was negligent. At oral argument, Larsen conceded the cross-appeal is moot because Millard has paid the full amount of damages awarded for Signature's uninsured loss.

On appeal, Signature argues the district court erred because the jury verdict did not reflect a manifest error of fact or law and therefore relief was not warranted under Rule 59(e) of the Federal Rules of Civil Procedure. However, a district court has broad discretion to alter or amend a judgment under Rule 59(e), and we will reverse only for a clear abuse of discretion. See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs., 141 F.3d 1284, 1286 (8th Cir. 1998). Here, the court heard the evidence and concluded Signature failed to establish that its expert accounted for the salvage sale proceeds. Thus, the court's decision to amend the judgment was not a clear abuse of discretion. See Howells Elevator, Inc. v. Stanco Farm Supply Co., 455 N.W.2d 777, 782 (Neb. 1990) (holding that a plaintiff must offer sufficient evidence of the property's market value before and after an accident).

**D. Prejudgment Interest.** Signature appeals the district court's denial of prejudgment interest but admits it is entitled to prejudgment interest only if we reinstate the insured portion of the jury's award of damages. Once again, the concession is appropriate. Signature's claim for the uninsured portion of its loss was contested and unliquidated. See 45 Neb. Rev. Stat. § 45-103.02; Lincoln Benefit Life Co. v. Edwards, 243 F.3d 457, 462 (8th Cir. 2001) (per curiam). Signature may not recover prejudgment interest on this unliquidated claim because its initial settlement offer was $7.9 million, well in excess of the damages awarded. See 45 Neb. Rev. Stat. § 45-103.02(1).

For the foregoing reasons, the judgments of the district courts are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-