Sixth Division
May 30, 2008

No. 1-05-4027

| | | |
|---|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DePAUL UNIVERSITY, | ) | |
| | ) | 99 CH 04867 |
| Defendant-Appellee | ) | |
| | ) | |
| (The City of Chicago, Holabird and Root, L and L | ) | |
| Engineers, and Caroline Cogtella, | ) | Honorable |
| | ) | Anthony Young, |
| Defendants). | ) | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Defendant Caroline Cogtella filed a lawsuit against defendants DePaul University (DePaul), L&L Engineers and Holabird & Root (H&R), alleging that she suffered bodily injury due to her exposure to the fluorescent lighting selected and installed in DePaul University's Goldblatt building. DePaul tendered its defense of Cogtella's complaint to plaintiff American Economy Insurance Co. (American Economy) because American Economy was the insurer of Metrick Electric Co. (Metrick), the electrical subcontractor that was hired to install the lighting at the Goldblatt building and DePaul was a named additional insured on Metrick's insurance policy. American Economy denied coverage and filed this declaratory judgment action as to its duty to defend in the Cogtella litigation. The trial court, in considering cross-motions for summary judgment, held that American Economy had an obligation to defend DePaul in the Cogtella litigation.

American Economy appeals, arguing that the trial court erred in finding that American Economy had a duty to defend DePaul because the complaint filed by Cogtella does not allege any negligence by Metrick and the trial court could not consider a third-party complaint filed by DePaul to find such a duty.

In December 1995, Cogtella filed her complaint for negligence, professional negligence, and negligent infliction of emotional distress against H&R, DePaul, and L&L Engineers. Cogtella's complaint alleged the following facts.

On or about November 1, 1991, the City of Chicago (City) and DePaul entered into an agreement in which the City sold real estate known as the Goldblatt building to DePaul, and DePaul, in turn, granted the City a leasehold interest for a portion of the building for City offices. Pursuant to that agreement, the City contracted with H&R to be the architect and general contractor for the design and construction of the City's space in the Goldblatt building. L&L Engineers was the electrical subcontractor on this project. All plans and specifications for the design and construction of the City's space were submitted to DePaul for approval.

Cogtella alleged that H&R, DePaul, and L&L Engineers selected and installed fluorescent light fixtures and lights in the City's space. However, they did not choose to shield or filter the lights with commercially available and reasonably priced diffusers or filters that would diffuse or reduce the ultraviolet (UV) rays emitted by the fluorescent lights to a safe level. Cogtella further claimed that, "At no time during the planning, preparation of specifications, or construction of the City's leasehold space did Defendants consider the possible health effects on people occupying the City's space when they decided to install fluorescent lighting in the space."

Cogtella worked as the risk manager for the City's department of finance, risk management office, which moved into a portion of the City's space in the Goldblatt building. Cogtella had been previously diagnosed with lupus erythematosus, an autoimmune disease which causes inflammation of various parts of the body, especially the skin, joints, blood and kidneys. At the time Cogtella began working in the Goldblatt building, her illness was under control and did not cause any impairment in her ability to perform her job. However, within days of Cogtella's move to the new work area in the Goldblatt building, she experienced a sudden, serious illness. She suffered severe erythema and edema of her face, neck and hands associated with first degree burns, skin lesions, hair loss, severe joint pain, vision impairment, and exhaustion. Cogtella alleged that this sudden illness was caused by her exposure to the unfiltered and undiffused fluorescent lighting in her work area.

In count I, Cogtella raised a claim of negligent infliction of emotional distress and alleged that defendants had a duty to provide a safe work area, free from hazards, for all people occupying the Goldblatt building and that they carelessly and negligently breached their duty and caused severe physical harm to Cogtella. These negligent acts and omissions proximately caused Cogtella "to suffer emotional distress of both a physical and mental nature" and she will continue to suffer "severe emotional and physical illness and financial harm." In count IV, Cogtella alleged that DePaul owed Cogtella "a duty to exercise reasonable care, skill, knowledge, and judgment in exercising its duty as landlord to ensure that the design and installation of the lighting system for the City's leased space did not present a danger to the occupants and users of the space." Contrary to its duty, DePaul was guilty of one or more of the following careless and

3

negligent acts or omissions:

"a. Improperly installed the fluorescent lighting fixtures and lights without installing diffusers or filters which would reduce or eliminate harmful UV emissions from the lights;

b. Failed to reasonably educate itself about current medical and scientific information and literature relating to the dangers of exposure to UV emissions from fluorescent lights;

c. Failed to ensure that the fluorescent lighting fixtures and lights installed in the City's leasehold space was safe [*sic*];

d. Failed to advise Defendants Holabird and Root and L&L that the fluorescent lights and lighting systems presented an unreasonable danger to the people occupying the City's leased space;

e. Was otherwise careless and negligent."

In June 1997, DePaul filed a third-party complaint against Metrick and the City. In count II, DePaul alleged that Metrick "was in charge of the installation of the electrical light fixtures in [Cogtella's] work station and on the fourth floor of the DePaul Center." DePaul further alleged that Metrick owed a duty to Cogtella to install electrical lighting fixtures that would not cause her physical, mental or emotional illness. DePaul claimed that Metrick was guilty of the following careless and negligent acts and/or omissions:

"a. Failed to reasonably educate itself regarding the

potential danger or harm caused by exposure to ultraviolet ray emissions from florescent lights which they installed into buildings;

b. Failed to ensure that the florescent lighting fixtures and light installed in the City's work space on the fourth floor of the DePaul Center and in [Cogtella's] work station were safe so as not to cause physical, mental and emotion illness to its workers;

c. Failed to properly consult with its lighting engineer, L&L Engineers, and its architect, Holabird & Root, in order to ensure that the florescent lights and lighting systems chosen by the City of Chicago for [Cogtella's] work station and the fourth floor of the Goldblatt building were safe and did not present a danger to the City of Chicago employees occupying the City of Chicago's leasehold space; and

d. Was otherwise careless and negligent."

In March 1999, American Economy filed its complaint for declaratory judgment, asking the trial court to find that H&R[1], DePaul, the City, and L&L Engineers did not qualify as additional insureds on Metrick's policy, and therefore, American Economy had no duty to defend or indemnify the defendants in connection with the Cogtella litigation.

---

[1] American Economy appealed the granting of summary judgment in favor of H&R in case No. 1-05-0403, which this court affirmed on March 31, 2008. See American Economy Insurance Co. v. Holabird & Root, No. 1-05-0403 (March 31, 2008).

1-05-4027

American Economy and Metrick entered into a contract for general liability insurance, effective October 1, 1993, to October 1, 1994. H&R, DePaul, L&L Engineers and the City were added as additional insureds under the policy pursuant to an additional insured endorsement, which provided as follows:

"WHO IS AN INSURED (Section II) is amended to include

as an insured the person or organization shown in the Schedule but

only with respect to liability arising out of 'your work' for that

insured by or for you."

The Cogtella litigation was settled in January 2000. In March 2005, the trial court denied American Economy's motion for summary judgment and granted DePaul's cross-motion for summary judgment. In November 2005, the trial court entered a money judgment in the amount of $179,027.55, plus interest, in favor of DePaul. This appeal followed.

The issue before us on appeal is whether American Economy has a duty to defend DePaul as an additional insured when the only allegations against the named insured, Metrick, are in DePaul's third-party complaint. American Economy maintains that because Cogtella did not name Metrick in the underlying complaint nor allege any negligence on Metrick's part, it does not have a duty to defend DePaul. DePaul responds that "the pleadings in the underlying litigation establish, at a minimum, that DePaul's liability potentially arose out of Metrick's work."

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for

6

disposition by way of summary judgment." Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). "Although summary judgment is a drastic means of disposing of litigation, it is an appropriate measure in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Crum & Forster Managers Corp., 156 Ill. 2d at 390-91. We review cases involving summary judgment *de novo*. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998).

The primary function of the court when construing an insurance policy is to ascertain and enforce the intentions of the parties as expressed in the agreement. Crum & Forster Managers Corp., 156 Ill. 2d at 391. "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." Crum & Forster Managers Corp., 156 Ill. 2d at 391.

"To determine an insurer's duty to defend its insured, a court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." Northbrook Property & Casualty Co. v. Transportation Joint

Agreement, 194 Ill. 2d 96, 98 (2000). " '[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy. The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.' " Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co., 337 Ill. App. 3d 356, 361 (2003), quoting International Insurance Co. v. Rollprint Packaging Products, Inc., 312 Ill. App. 3d 998, 1007 (2000). Moreover, "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." Northbrook Property & Casualty Co., 194 Ill. 2d at 98. "The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy." Illinois Emcasco Insurance, 337 Ill. App. 3d at 361.

"As the threshold for pleading a duty to defend is low, any doubt with regard to such duty is to be resolved in favor of the insured." United Services Automobile Ass'n v. Dare, 357 Ill. App. 3d 955, 963 (2005). "[I]nsurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the insurance contract, it will be resolved in favor of the insured and against the insurer." Dare, 357 Ill. App. 3d at 963-64. Further, "[p]rovisions in an insurance policy that limit or exclude coverage are also construed liberally in favor of the insured and

against the insurer." <u>Dare</u>, 357 Ill. App. 3d at 964.  "The insurer's duty to defend is much broader than its duty to indemnify its insured." <u>Crum & Forster Managers Corp.</u>, 156 Ill. 2d at 393-94.

In order to determine whether American Economy is required to defend DePaul as an additional insured, we must look at the language of the additional insured endorsement.  Under the policy, American Economy is required to defend DePaul as an additional insured of Metrick "but only with respect to liability arising out of 'your work' for [DePaul] by or for [Metrick.]" According to the definition in the policy,

" 'Your work' means:

a. Work or operations performed by you or on your behalf;

and

b.  Materials, parts or equipment furnished in connection

with such work or operations.

'Your work' includes warranties or representations made at

any time with respect to the fitness, quality, durability or

performance of any of the items included in a. or b. above."

Illinois courts have held that the phrase "arising out of" is "both broad and vague, and must be liberally construed in favor of the insured; accordingly, 'but for' causation, not necessarily proximate causation, satisfies this language." <u>Maryland Casualty Co. v. Chicago & North Western Transportation Co.</u>, 126 Ill. App. 3d 150, 154 (1984); see also <u>Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.</u>, 150 Ill. App. 3d 472, 475 (1986).  Further,

" '[a]rising out of' has been held to mean 'originating from,' 'having its origin in,' 'growing

out of' and 'flowing from.' " Maryland Casualty Co., 126 Ill. App. 3d at 154, quoting Western Casualty & Surety Co. v. Branson, 463 F. Supp. 1208, 1210 (E.D. Ill. 1979). Therefore, in order to establish the obligation to defend under the policy, DePaul needs only to show that "but for" the work performed by Metrick, it is potentially liable to Cogtella.

The underlying complaint alleged that it was the selection and the installation of fluorescent lighting without UV diffusers that caused Cogtella's injury. Although that complaint does not mention Metrick's installation of the lighting, the third-party complaint filed by DePaul alleged that Metrick "was in charge of the installation of the electrical light fixtures in [Cogtella's] work station and on the fourth floor of the DePaul Center." American Economy contends that this court cannot look to the third-party complaint to ascertain Metrick's involvement, but is limited to the allegations in the Cogtella complaint and the subject policy. Thus, we need to determine whether we may consider any evidence beyond the underlying complaint, such as the third-party complaint filed here, in order to determine the duty to defend.

In our decision in the related American Economy appeal, we engaged in a lengthy analysis of the Illinois cases in which evidence beyond the underlying complaint was admitted in determining the duty to defend. See American Economy, slip op. at 10-22; see also Associated Indemnity Co. v. Insurance Co. of North America, 68 Ill. App. 3d 807, 816 (1979) (holding that "the insurer is obligated to conduct the putative insured's defense if the insurer has knowledge of true but unpleaded facts, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage"); Fidelity & Casualty Co. of

10

1-05-4027

New York v. Envirodyne Engineers, Inc., 122 Ill. App. 3d 301, 304-05 (1983) (allowing evidence beyond the underlying complaint to be admitted except "when it tends to determine an issue crucial to the determination of the underlying lawsuit"); Safeco Insurance Co. v. Brimie, 163 Ill. App. 3d 200 (1987) (applying the decision in Envirodyne to allow the admission of evidence beyond the complaint at the summary judgment stage); Millers Mutual Insurance Ass'n of Illinois v. Ainsworth Seed Co., 194 Ill. App. 3d 888, 891-92 (1989) (finding the decision in Envirodyne to be "persuasive" and permitting an affidavit to be considered in determining coverage); Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp., 304 Ill. App. 3d 734, 743 (1999) (relying on Ainsworth Seed Co. and Envirodyne to consider extrinsic evidence on the question of coverage); West Bend Mutual Insurance Co. v. Sundance Homes, Inc., 238 Ill. App. 3d 335, 337-38 (1992) (allowing the review of a third-party complaint to develop implications made in the underlying complaint when determining coverage).

Based on that authority, we held that "consideration of a third-party complaint in determining a duty to defend is in line with the general rule that a trial court may consider evidence beyond the underlying complaint if in doing so the trial court does not determine an issue critical to the underlying action (see Envirodyne, 122 Ill. App. 3d at 308). The trial court should be able to consider all the relevant facts contained in the pleadings, including a third-party complaint, to determine whether there is a duty to defend." American Economy, slip op. at 22.

However, there is one important factual distinction between this case and the related American Economy decision, which is that DePaul was the party that prepared and filed the third-party complaint against Metrick and used its complaint to seek coverage from American

11

Economy as an additional insured. American Economy relies on <u>Lexmark International, Inc. v. Transportation Insurance Co.</u>, 327 Ill. App. 3d 128, 136 (2001), as support for its argument that extrinsic evidence cannot be considered to determine a duty to defend. The <u>Lexmark</u> decision cited to a finding from <u>Shriver Insurance Agency v. Utica Mutual Insurance Co.</u>, 323 Ill. App. 3d 243, 251 (2001), that "[t]he exception for true but unpleaded facts was not meant to be applied to situations where the only extraneous facts are supplied by the insured." <u>Lexmark</u>, 327 Ill. App. 3d at 126. Yet, in its decision, the <u>Lexmark</u> court declined to consider evidence outside the four corners of the complaints because the extrinsic evidence was aimed at the underlying lawsuit and that to consider it, the court would have had to determine issues crucial to the underlying lawsuit. <u>Lexmark</u>, 327 Ill. App. 3d at 126. The reviewing court made no finding that the extrinsic evidence was supplied by the insured.

In <u>Shriver</u>, Shriver Insurance Agency (Shriver) filed a declaratory judgment action against its insurer, Utica Mutual Insurance Company (Utica), after Utica declined to defend Shriver in an underlying lawsuit. Utica filed a motion to dismiss Shriver's complaint based on a policy exclusion. Shriver responded to the motion and filed a motion for summary judgment. Shriver attached an affidavit from its president as well as the letter sent to Utica informing it of the underlying action and the facts leading up to the lawsuit. Utica filed its own motion for summary judgment. The trial court granted Shriver's motion for summary judgment and found that Utica had a duty to defend Shriver because the letter prepared by Shriver's president constituted true but unpleaded facts known to Utica. <u>Shriver</u>, 323 Ill. App. 3d at 246-47.

On appeal, the reviewing court found that the complaint in the underlying action "alleged

1-05-4027

the type of risk Utica intended to exclude from coverage." Shriver, 323 Ill. App. 3d at 249.

Additionally, the court stated that it did not believe that the "true but unpleaded facts" doctrine

"was meant to be applied to situations such as existed in this case, *i.e.*, where the only extraneous

facts the insurer possessed were supplied by the insured. In such a situation the insurer has no

way of knowing whether the facts are true unless it conducts an independent investigation."

Shriver, 323 Ill. App. 3d at 251. "Typically, in cases where the 'true but unpleaded facts'

doctrine has been applied to show that an insurer had the duty to defend, the extraneous facts

possessed by the insurer and known to be true were facts the insurer discovered during its own

investigation of the underlying action." Shriver, 323 Ill. App. 3d at 251. The Shriver court noted

the decisions in Associated Indemnity and La Rotunda v. Royal Globe Insurance Co., 87 Ill. App.

3d 446 (1980), as examples.

> "In [La Rotunda], the court determined that Royal Globe
> had a duty to defend where the results of its own investigation
> disclosed the true but unpleaded fact that all of the land in question
> was not used as a junkyard or refuse dump. Therefore, smoke from
> the land, which caused a driving accident on a neighboring road,
> might have come from the vacant part of the land and not the
> junkyard, making the business exclusion in Royal Globe's policy
> inapplicable.
>
> In [Associated Indemnity], the insurer, Insurance Company
> of North America (INA), knew that unpleaded facts related to it by

13

1-05-4027

> Associated Indemnity were true. INA possessed a file containing
> documents produced in the underlying litigation that verified the
> truth of Associated Indemnity's facts. Also, INA knew the facts to
> be true because it was defending another party in the underlying
> action." Shriver, 323 Ill. App. 3d at 251-52, citing La Rotunda, 87
> Ill. App. 3d at 452; and Associated Indemnity, 68 Ill. App. 3d at
> 818-19.

Nevertheless, the Shriver court continued its analysis to find that even if the unpleaded facts were assumed to be true, the facts did not raise the possibility that the underlying lawsuit was within the coverage of Utica's policy. Shriver, 323 Ill. App. 3d at 252.

Here, the third-party complaint alleging Metrick's involvement in the Goldblatt building construction was prepared by the insured, DePaul. However, even if we decline to consider DePaul's third-party complaint, other true but unpleaded facts are present in the case that were not provided by the insured.

In the related American Economy opinion, we found that the record showed "that in addition to the third-party complaint, true but unpleaded facts should have alerted American Economy to the possibility that the Cogtella complaint against H&R was potentially within the coverage of the Metrick policy." American Economy, slip op. at 26. The same true but unpleaded facts are present in this case.

> "First, we note that American Economy has never disputed the fact
> that Metrick installed the lighting. However, in its motion for

14

summary judgment, American Economy contended that the injuries alleged in the Cogtella complaint arose from the selection of fluorescent lighting and that 'there is no suggestion in her complaint that the manner of installation had any contribution whatsoever to her alleged injury.' This statement is not supported by the Cogtella complaint. In her complaint, Cogtella alleged that 'Defendants selected and installed fluorescent light fixtures and lights. However, they did not elect to shield or filter the lights with commercially available and reasonably priced diffusers or filters that would diffuse or reduce to a safe level the ultraviolet (UV) rays emitted by the fluorescent lights.' Thus, Cogtella alleged that her injuries were caused by the selection as well as the installation of the fluorescent lighting without diffusers. Further, Metrick's subcontract for its work at the Goldblatt building is included in the record and provides that Metrick was responsible for the construction of the 'complete operating electrical system.'

Additionally, American Economy knew that Metrick installed the lighting and that the Cogtella lawsuit arose from the selection and installation of fluorescent lighting because it represented Metrick in the underlying case. Again, American Economy does not dispute this fact. *** Based on its

>representation of Metrick in the underlying lawsuit and Metrick's
>
>subcontract, American Economy knew that Metrick installed the
>
>lighting at the Goldblatt building and that the Cogtella complaint
>
>alleged that her injuries were caused by the selection and
>
>installation of the fluorescent lighting without diffusers."
>
>American Economy, slip op. at 26-27.

The additional insured endorsement provided coverage for liability arising out of Metrick's work for DePaul. As we previously stated, "arising out of" is to be liberally construed in favor of the insured and only a "but for" causation is required. See Maryland Casualty Co., 126 Ill. App. 3d at 154. It is uncontested that Metrick installed the fluorescent lighting. The Cogtella complaint against DePaul alleged that she was injured because of the selection and installation of the fluorescent lighting without UV diffusers. Therefore, there is the potential for liability of DePaul because "but for" Metrick's work, the installation of the fluorescent lighting without diffusers, Cogtella would not have been injured. These facts demonstrate American Economy had a duty to defend DePaul under the additional insured endorsement afforded in its policy. We also note that consideration of these true but unpleaded facts as well as the third-party complaint does not determine any issue crucial to the Cogtella lawsuit.

Based on all of the foregoing, we find the trial court properly held that American Economy has a duty to defend DePaul and we affirm the decision of the circuit court of Cook County.

Affirmed.

1-05-4027

CAHILL and GARCIA, JJ., concur.