ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee, *v.* JOHN GUTENKAUF *et al.*, Defendants-Appellants.—(FIREMAN'S FUND INSURANCE COMPANY, Plaintiff-Appellee, *v.* JOHN GUTENKAUF *et al.*, Defendants-Appellants.)

First District (5th Division)    No. 80-3244

Opinion filed December 31, 1981.

Serpico, Novelle, Dvořak & Navigato, Ltd., of Chicago, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Jill B. Berkeley and Stephen R. Swofford, of counsel), for appellee Allstate Insurance Company.

Touhy and Martin, Ltd., of Chicago, for appellee Fireman's Fund Insurance Company.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendants appeal from an order granting plaintiffs' motions for summary judgment in an action for declaratory judgment, contending (1) that the trial court erred in finding that two homeowners insurance policies issued by plaintiffs excluded coverage for injuries sustained in a boating accident; and (2) that defendant John Gutenkauf complied with the notice provisions of both policies.

According to the deposition testimony of defendant John Gutenkauf,

he owned a home in Norridge, Illinois, which was covered by a home-owners policy issued by Allstate Insurance Company. He also owned a residence on Sunday Lake, in Minoqua, Wisconsin, insured by a home-owners policy issued by Fireman's Fund Insurance Company, and jointly owned a second lot on Sunday Lake with two other family members. The latter property was vacant, except for picnic tables and a fireplace, and functioned as the main recreational area. There was a pier approximately 30 feet long and 4 feet wide, which ran perpendicular to the shoreline off the vacant lot in an east-west direction, and a raft 30 to 40 feet from the end of the pier. To the north of the pier the shore is sandy, while to the south it is "maybe rocky or—grassy." Gutenkauf owned a 17-foot power boat with a 110 horsepower inboard-outboard motor—the only power boat owned by any of the families—which he operated on Sunday Lake and usually docked on the south end of the pier.

On July 4, 1970, John Gutenkauf had been using his boat on Sunday Lake for about three hours, going out and back pulling different water-skiers and, on his return from one such trip, he positioned his power boat about 10 to 15 feet from shore in front of the vacant lot on the north side of the pier for the purpose of towing additional skiers. The boat was perpendicular to the pier, the stern was about 6 to 8 feet from the pier on the north side, and his daughter Carrie Ann was standing in about 30 inches of water about 4 feet behind the boat, waiting to ski. His other daughter, Jackie, and Gary Basset were also standing in the water. He left the engine running and, while he was adjusting the second tow line in the back of the boat, his 2-year-old son, who had been seated next to him in the passenger seat of the boat, threw the control lever which controlled the speed and direction of the boat into reverse. The boat lurched back-ward, striking Carrie Ann and injuring her.

Approximately one week later, John Gutenkauf called his Allstate agent and, after explaining the circumstances of the accident, was told by the agent that he did not think it was covered by the homeowners policy. Within three weeks, he also went to the agency where he had obtained his Fireman's Fund policy and, after reporting the occurrence, was informed by an employee of that office that she did not think there was coverage under that policy.

It appears that there was no further contact between plaintiffs and John Gutenkauf until 1976, when his daughter Carrie Ann brought an action against him through her mother and next friend, Lorraine Guten-kauf, for personal injuries arising out of the accident. His tender of the defense of that action was accepted by plaintiffs under a reservation of all rights under their policies. Plaintiffs then filed separate declaratory judgment actions against John Gutenkauf, his wife, and his daughter—seeking a determination of the rights and liabilities of the parties with

respect to the policies. Thereafter, the two actions were consolidated— following which defendants filed motions for summary judgment and plaintiffs then filed countermotions for summary judgment.

The trial court granted plaintiffs' countermotions, ruling that the accident came within the watercraft exclusions of the policies. The court, however, made no ruling as to whether John Gutenkauf had given notice of the accident, as required by the policies.

OPINION

■■ It is the contention of defendants that each of the homeowners policies covered John Gutenkauf's liability for damages because of Carrie Ann's injuries. They argue that summary judgment was improperly entered because the watercraft exclusions were inapplicable since the accident occurred on the "premises," as that word is used in the policies.

Each of the policies provides coverage from all damages which the insured was legally obligated to pay because of bodily injuries sustained by any person, but each also contains what is termed a watercraft exclusion. Thus, the Allstate policy excludes coverage for injury arising from the "ownership, maintenance, operation, use, loading or unloading of any: * * * (c) watercraft, *while away from the premises*, if (1) with inboard or inboard-outboard power exceeding 50 horsepower, * * *." (Emphasis added.) The policy defines "premises," in pertinent part, as all one-family dwellings where an insured maintains a residence, vacant land owned by an insured, and private approaches and other premises incidental to those premises. The Fireman's Fund policy also excludes coverage for bodily injury or property damage "arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft: (1) *owned by or rented to any Insured if the watercraft has inboard or inboard-outboard motor power of more than 50 horsepower* * * *"; but the exclusion does not apply to "bodily injury or property damage occurring *on the residence premises*." (Emphasis added.) Under the policy, "residence premises" is defined, in pertinent part, as "a one or two-family dwelling building, appurtenant structures, grounds and private approaches thereto."

Thus, as presented by the parties, the resolution of the coverage question depends on whether the situs of Carrie Ann's injuries was on "premises" as that word is used in the policies. In the consideration of this question, we have found that the Illinois courts have not previously construed the term "premises" in conjunction with the watercraft exclusion typically found in homeowners insurance policies. Although the interpretation of the term was at issue in *United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 429 N.E.2d 1203, and in *General Casualty Co. v. Olsen* (1977), 56 Ill. App. 3d 986, 372 N.E.2d 846, neither

case is particularly helpful here. In *Schnackenberg*, which involved a bicycle accident in an intersection 2½ blocks from the Schnackenberg home, the court focussed primarily on the definition of "the ways immediately adjoining," a phrase included within the definition of premises in the insured's homeowners policy; and in *Olsen*, where injuries were sustained in a minibike accident on a dirt track, the court determined that the phrase "away from the premises" meant "not logically connected with the area utilized for the residential uses of the insured" but, in so doing, stated that its holding was limited to the facts of that case and noted that the meaning of "premises" in one connection may be radically different in another.

It appears, however, that the interpretation of a watercraft exclusionary clause similar to the one in the instant case was addressed by the Supreme Court of Minnesota in *Torbert v. Anderson* (1974), 301 Minn. 339, 222 N.W.2d 341. There, the plaintiff, while swimming near a raft in a Minnesota lake, was struck by a boat owned by Anderson and operated by his son, who had come from the Anderson cabin across the lake to pick up a friend. A homeowners policy provided coverage for injuries arising from accidents on the insured premises or out of the activities of the insured, but it did not cover "ownership, maintenance, operation, use, loading or unloading * * * of watercraft owned by or rented to the Insured, *while away from the premises* * * *." (Emphasis added.) "Premises" was defined as "the premises described in the Declarations, including grounds, garages, stables and other outbuildings incidental thereto, and private approaches thereto." It was contended by Anderson that the lake was a private approach to his cabin and, thus, that the occurrence was on the premises and not within the watercraft exclusion. The court found that because the plain meaning of "private approaches" did not include the lake, the exclusion was applicable.

Here, the occurrence took place 10 to 15 feet from the shoreline while Carrie Ann was standing in the water. Although the facts of *Torbert* do not indicate how far plaintiff there was from the shore when struck by the boat, we do not believe any distinction in that regard is of significance because Carrie Ann was neither standing on Gutenkauf's private property nor touching the pier or raft structures owned and maintained by the family. Defendants do not contend, as did the plaintiff in *Torbert*, that the entire lake is included in the "premises," and they argue that the place of the accident was so connected with the use of the Gutenkauf home that it was a part of the premises. Thus, in effect, defendants contend that the premises extended at least 15 feet into the lake—which, of course, would render the watercraft exclusion inapplicable. It appears to us, however, that to define a portion of the lake as premises would involve an arbitrary line-making decision which could lead to further line drawing extensions.

As reasoned by our supreme court in *Schnackenberg*, "[i]f defendants' interpretation of the coverage clause were adopted, the 'insured premises' definition would be rendered meaningless for there would be no geographical limit to coverage and liability for conduct * * *." 88 Ill. 2d 1, 8.

Furthermore, after a review of cases from other jurisdictions, we do not believe that the lake area in front of defendants' vacant lot constitutes a "private approach" as that phrase is used in the policy definitions of premises.

In *Guice v. MFA Mutual Insurance Co.* (La. App. 1981), 395 So. 2d 934, plaintiff argued that a motorcycle injury which occurred on a logging road which ran across a corner of her property and continued across the property of others may be construed as a private approach. Insured's homeowners policy excluded coverage for bodily injury arising out of the "ownership, maintenance, operation, use, loading or unloading of" any recreational vehicle owned by insured if the injury occurred "away from the premises," and residence premises was defined in that policy as "a one or two family dwelling building, appurtenant structures, grounds and private approaches thereto." The court stated that "private" could mean either exclusively used by the insured or it could mean private as distinguished from public, and in characterizing the logging road as private adopted the second interpretation, reasoning that ambiguities are construed in favor of the insured and exclusionary clauses are to be strictly and narrowly construed. The court then noted the following:

> " 'Approach' is defined by dictionaries as a means of access. The policy provision defines residence premises as a dwelling, appurtenant structures, grounds and 'private approaches *thereto*'. (Emphasis supplied). This phrase denotes means of access to the dwelling, appurtenant structures and grounds of the insured. It denotes an approach or access reasonably and ordinarily necessary or incidental to the use and enjoyment of the insured's residence property." (395 So. 2d 935, 936.)

In finding that the logging road was not a private approach as contemplated by the policy, it reasoned:

> "It obviously exists as a means of access to other property and only incidentally crosses the rear of plaintiff's six-acre tract. The regular approach or access, as those terms are commonly used, to plaintiff's property is from a public road running in front of the home. The logging road was not designed as a means of access to plaintiff's property nor is it a means of access reasonably or ordinarily necessary or incidental to the use and enjoyment of the insured's residence." 395 So. 2d 935, 936.

Additionally, in *Continental Insurance Co. v. Thompson* (N.D. Okla.

1972), 356 F. Supp. 560, the interpretation of the term private approach was also at issue. There, insured's homeowners policy provided coverage for a dwelling located on the west side of a tract of land but did not cover a filling station owned by insured on the east side of the property. An accident occurred on the driveway of the service station, which was open to the public and was being utilized by the public, next to a gasoline pump. The court found that because the station was open to the public, the driveway constituted a "public driveway" rather than a "private approach."

In the present case, John Gutenkauf testified that Sunday Lake is a public lake and that he has no property interest in any portion of the ground under the water. Furthermore, we do not believe that the portion of the lake where the accident occurred was a means of access which is "reasonably or ordinarily necessary or incidental to the use and enjoyment of the residence." Defendants' properties are located on Sunday Lake Road, on a peninsula extending into the lake, and there has been no indication by defendants that they do not regularly approach the lots from the road. In any event, there is nothing in the record to indicate that the lake was ever used as an approach.

We next address defendants' alternative argument, that the term "premises" is ambiguous and should be construed in their favor.

■■ In *Thornton v. Illinois Founders Insurance Co.* (1981), 84 Ill. 2d 365, 371, 418 N.E.2d 744, 747, it was stated:

> "In interpreting a contract of insurance the general rule is that where the provisions of a policy are clear and unambiguous, it is the duty of the court to enforce them according to their plain meaning."

The insurance contract should be read as a whole in order to determine whether an ambiguity exists, and the court should not search for an ambiguity where there is none. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1.) However, where an ambiguity is found to exist in an insurance policy, it must be construed in favor of the insured. *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 400 N.E.2d 921.

The term "premises" has generally been held to be unambiguous and is usually found to refer to a fixed situs, but may include private approaches and other areas necessary or incidental to an insured's operations. (7A Appleman, Insurance Law and Practice (Berdal ed.), §4500.02 (Berdal ed. 1979).) Although defendants here have not explained how the word "premises" is ambiguous as applied to the facts of this case or as contained in plaintiffs' policies, they have referred us to a number of cases in support of their position.

In *Morris v. Western Casualty & Surety Co.* (Mo. App. 1967), 421

S.W.2d 19, plaintiff (an electrical contractor) sought coverage under a manufacturers' and contractors' liability policy for electrical shock injuries sustained by one of his customers as a result of alleged faulty wiring of customer's home. The policy covered "Premises-Operations," which was described as "the ownership, maintenance or use of premises, and all operations." On the basis of its finding that the word "premises" was not defined or otherwise restricted in the policy, the court held that the policy was ambiguous and construed its terms against the insurer.

In *Shelman v. Western Casualty & Surety Co.* (1977), 1 Kan. App. 2d 44, 562 P.2d 453, a construction company in the process of building a highway bridge contracted with defendant's insured (a barge operator) to ferry equipment across the river on a barge. During the loading operation, plaintiff (an employee of the highway company) was injured. The policy contained a watercraft exclusion clause stating that coverage would not apply to the "ownership, maintenance, operation, use, loading or unloading of (1) watercraft * * * if the accident or occurrence takes place away from premises owned by, rented to or controlled by the named insured * * *." Defendant's denial of coverage presented an issue as to whether the accident occurred on premises controlled by the insured; but, because the policy neither defined the word "premises" nor listed the premises owned, controlled or rented by the insured, the reviewing court adopted the findings of the trial court which distinguished cases in which the term was clearly defined and then held that the policy was not so unambiguous that the term could be clearly limited to insured's principal base of operations.

The third case cited by defendants in support of their position is *General Casualty Co. v. Olsen*, which we have referred to above. There, a minor was injured while riding a minibike on a dirt track used for the operation of minibikes, which was partially located on insured's property but extended over adjacent nonowned property to the border of a railroad's property. The minor lost control of the bike while on the dirt track and ran into a fence which separated the nonowned lot and the railroad property. The exclusion in the homeowners policy provided that it does not apply to "bodily injury or property damage arising out of the maintenance or use of any recreational motor vehicle if the bodily injury or property damage occurs 'away from' the 'residence premises,' " and premises is defined as "a one or two family dwelling building, appurtenant structures, grounds and private approaches thereto * * *." The court found under the facts of that case, where the track was used in its entirety for insured's residential recreational purposes and where the injury was causationally connected, that "the policy exclusion at issue here dealing with the interpretation of the words 'away from' and the definition of 'residence premises' is, in fact, ambiguous," and the court

determined that under the facts there, the terms meant "not logically connected with the area utilized for the residential uses of the insured." 56 Ill. App. 3d 986, 990, 372 N.E.2d 846, 850.

In *Morris* and *Shelman*, the term "premises" was found ambiguous in policies which did not define or in any way limit it, unlike the policies in question here, and in all three cases there were findings of ambiguity as applied to factual settings—quite unlike the present case. We are thus unpersuaded by defendants' argument and do not find the cases relied on by defendants controlling of the factual situation before us.

Moreover, it is noteworthy that the obvious purpose of the watercraft exclusion in the homeowners policy was to limit the scope of liability for boating injuries. Both homeowners policies specifically exclude liability coverage for watercraft related accidents away from the premises for boats with inboard-outboard motors over 50 horsepower and for sailboats over 26 feet in length or sailboats with motors exceeding 25 horsepower. As explained in *Torbert v. Anderson* (1974), 301 Minn. 339, 343, 222 N.W.2d 341, 344, "[t]he nature of homeowners policies is consistent with coverage for boat-related accidents *on* the premises, regardless of the horsepower of the motor. The horsepower of a motor makes it more dangerous only when away from shore or dock. Marine insurance riders in homeowners policies are available for those who purchase or rent boats with large motors."

Accordingly, we are of the belief that the watercraft exclusions in the policies here are applicable and, on that basis, summary judgment was properly entered in plaintiffs' favor. In view thereof and because the trial court did not rule on the issue of notice, we find it unnecessary to address the question as to whether John Gutenkauf complied with the notice conditions of his homeowners policies.

Affirmed.

MEJDA and WILSON, JJ., concur.