2018 IL App (1st) 161864

FIRST DISTRICT
FOURTH DIVISION
March 1, 2018

No. 1-16-1864

DOMINICK'S FINER FOODS,                          )
                                                 )          Appeal from the
    Plaintiff-Appellant,            )          Circuit Court of
                                                 )          Cook County
v.                                               )
                                                 )
INDIANA INSURANCE COMPANY, THE                   )
NETHERLANDS INSURANCE COMPANY—A                  )
STOCK COMPANY, MONTERREY SECURITY                )
CONSULTANTS, INC., and SAFETY SERVICE            )          No. 11 CH 1535
SYSTEMS SECURITY, INC.                           )
                                                 )
    Defendants.                     )
                                                 )
(Indiana Insurance Company, The Netherlands      )
Insurance Company—A Stock Company, Defendants-   )
Appellees)                                       )
_____  )
                                                 )
MONTERREY SECURITY CONSULTANTS, INC.,            )
                                                 )
    Third-Party Plaintiff,          )
                                                 )
v.                                               )
                                                 )          Honorable
SCOTTSDALE INSURANCE COMPANY,                    )          Kathleen M. Pantle,
                                                 )          Judge Presiding.
    Third-Party Defendant.          )

        JUSTICE ELLIS delivered the judgment of the court, with opinion.
        Presiding Justice Burke and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal involves a dispute over insurance coverage, after a young woman was killed

and a man was injured in a shooting that took place in a parking lot outside Dominick's Finer

Foods (Dominick's) on the northwest side of Chicago. When Dominick's was sued by the

1-16-1864

decedent's estate, it tendered its defense to insurers Netherlands Insurance Company

(Netherlands) and Indiana Insurance Company (Indiana) and later sought indemnification as

well. The insurers denied coverage, and Dominick's filed suit for a declaration of coverage and

damages for the insurers' alleged bad-faith conduct.

¶ 2      After Dominick's and Netherlands filed cross-motions for summary judgment, the trial

court ruled in favor of Netherlands and against Dominick's on all counts. The trial court entered

language pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), allowing an

immediate appeal of these claims, while other litigation involving other parties continued in the

trial court.

¶ 3      We hold that Netherlands owed Dominick's a duty to defend and indemnify under the

relevant language of the insurance policy. We thus reverse the grant of summary judgment in

favor of Netherlands and remand this case for the entry of summary judgment in favor of

Dominick's on the issue of coverage. But we affirm the trial court's grant of summary judgment

in favor of Netherlands on the claims of bad faith under section 155 of the Illinois Insurance

Code (215 ILCS 5/155 (West 2014)) because even if we ultimately disagree with the insurers'

interpretation of the insurance policy, we do not find their position to have been unreasonable,

and a *bona fide* dispute over coverage existed.

¶ 4                                    I. BACKGROUND

¶ 5      The entire background of this case is somewhat complicated, involving a lot of moving

parts—various parties and different insurance policies—so we will limit our background to what

is relevant to this appeal.

¶ 6      On September 6, 2004, a shooting occurred in the parking lot outside of a Dominick's

supermarket on the 3300 block of West Belmont Avenue. The shooting claimed the life of

Crystal Mustafov and injured Jose Ramirez. The shooters initially confronted the victims inside Dominick's before following them into the parking lot.

¶ 7    The Dominick's store in question was a tenant of the Kennedy Plaza Shopping Center, which was owned by a trio of entities: Kennedy Plaza Associates LLC, Kennedy Plaza BK, and Kennedy Plaza RL, LLC (collectively, Kennedy Plaza).

¶ 8    Less than a month later, a lawsuit was filed by the estate of Crystal Mustafov, which we will call the "Gallo litigation" after the named plaintiff. The Gallo complaint was amended several times, the other individual injured in the shooting (Ramirez) was added as a plaintiff, and the litigation was stayed for several years pending the outcome of criminal proceedings. The defendants ultimately included Dominick's, Kennedy Plaza, and security companies that performed work at that location.

¶ 9    In the sixth amended complaint in the Gallo litigation, both Gallo and Ramirez alleged that Dominick's "possessed, operated and controlled a food store and adjacent parking lot" at 3300 West Belmont; that Dominick's had a "duty *** to ensure the safety of [its] patrons and invitees"; and that Dominick's breached that duty by negligently failing to supervise or otherwise protect "store patrons and invitees" such as Mustafov and Ramirez from harm.

¶ 10   Kennedy Plaza had purchased a commercial general liability (CGL) insurance policy from Netherlands (Kennedy policy), in effect at the time of the shooting, which insured against claims for bodily injury, property damage, or "personal and advertising injury." It is undisputed that Dominick's was an additional insured on the policy, and that the additional insurance covered not only the Dominick's store but the adjacent parking lot where the shooting occurred. The relevant portion states as follows:

"I. ADDITIONAL INSURED—BY CONTRACT, AGREEMENT OR PERMIT

1. Paragraph 2. Under SECTION II—WHO IS AN INSURED is amended to include as an insured any person or organization when you and such person or organization have agreed in writing in a contract, agreement or permit that such person organization [*sic*] can be added as an additional insured on your policy to provide insurance such as is afforded under this Coverage Part. Such person or organization is an additional insured only with respect to *liability arising out of:*

    a. *Your ongoing operations performed for that person or organization; or*

    b. *Premises or facilities owned or used by you.* ***

2. This endorsement provision I. does not apply:

a. Unless the written contract or agreement has been executed, or permit has been issued, prior to the 'bodily injury', 'property damage' or 'personal and advertising injury', ****

* * *

d. To 'bodily injury', 'property damage' or 'personal and advertising injury arising out of any act, error or omission that results from the additional insured's sole negligence or wrongdoing.' " (Emphasis added.)

¶ 11    Relying on the policy language, Dominick's tendered its defense of the Gallo litigation to Netherlands, which denied coverage.

¶ 12    The Gallo litigation proceeded. The seventh amended complaint added the various entities we have collectively referred to as "Kennedy Plaza" for the first time as defendants, claiming that Kennedy Plaza owned and operated the parking lot, had a duty to secure and protect that lot, and breached its duty, resulting in the shootings that occurred.

¶ 13    Kennedy Plaza settled out of the Gallo litigation in January 2010 for $40,000. That left Dominick's and two security companies as remaining defendants. In March 2013, by which time a twelfth amended complaint was pending, the remaining defendants settled the litigation, with Dominick's contributing $1.3 million to the settlement.

¶ 14    About a year after settling, Dominick's sued Netherlands, claiming that it had a duty to defend and indemnify Dominick's and asserting a bad-faith claim under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2014)).[1]

¶ 15    After cross-motions for summary judgment, the trial court agreed with Netherlands that Dominick's was not entitled to coverage under the policy. The court rejected Dominick's estoppel argument as well. And the court found the section 155 claim time-barred. The court thus entered summary judgment on all counts directed against Netherlands in its favor.

¶ 16    There are other parties, other claims, and other insurance policies involved in this lawsuit that remain pending below. None of them concern this appeal. The trial court entered language pursuant to Rule 304(a), finding no just reason to delay enforcement of or appeal from this order, and thus the order is properly before us on appeal.

¶ 17                                        II. ANALYSIS

---

[1]Before adding Netherlands as a defendant below, Dominick's first sued Indiana, the insurer to whom it tendered its defense—and on whose stationery the denial letter was written. Netherlands has since assured us that Netherlands, who issued the policy in question, is the proper party, and that Indiana is merely its affiliate. Out of an abundance of caution, Dominick's continues to refer to the insurers collectively as "IIC/NIC." We are not asked to resolve any dispute over which party is the proper insurer. And for our purposes, it does not matter. Our analysis is concerned with the language of the insurance policy, not which of the insurers is responsible for that policy. For the remainder of our analysis, we will refer to the insurer as Netherlands, with the obvious caveat that we offer no opinion on which of these two insurance companies is ultimately responsible for that policy.

1-16-1864

¶ 18    We review the entry of summary judgment *de novo. Pence v. Northeast Illinois Regional Commuter R.R. Corp.*, 398 Ill. App. 3d 13, 16 (2010). *De novo* review is independent of the trial court's decision; we need not defer to the trial court's judgment or reasoning. *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 114. Summary judgment is proper only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. The construction of an insurance policy is also a question of law subject to *de novo* review. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 370-71 (2007).

¶ 19    The first questions relate to coverage—whether Netherlands had a duty to defend Dominick's in the underlying Gallo litigation and to indemnify Dominick's for all or part of the $1.3 million Dominick's paid to settle that litigation. We begin with the duty to defend.

¶ 20                                    A. Duty to Defend

¶ 21    The duty to defend is broader than the duty to indemnify. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 456 (2010). To determine whether an insurer has a duty to defend, the court examines the allegations in the underlying complaint. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). If the underlying complaint alleges facts within or potentially within the policy coverage, the insurer must defend the insured. *Id.*

¶ 22    Both "[t]he underlying complaints and the insurance policies must be liberally construed in favor of the insured." *Id.* at 74. If a provision is subject to more than one reasonable interpretation, it is ambiguous, and "[a]ll doubts and ambiguities must be resolved in favor of the insured." *Id.* An insurer cannot refuse to defend "unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or

- 6 -

potentially within, the policy's coverage." (Emphasis in original.) *Id.* at 73. This rule holds true "even if the allegations are groundless, false, or fraudulent." *Id.* If there are several theories alleged in that complaint, the insurer has the duty to defend all of them, even if only one theory falls within potential coverage. *Id.*

¶ 23   At the time Dominick's tendered its defense of the Gallo litigation to Netherlands, the sixth amended complaint was pending. In the general allegations of the complaint, the plaintiffs alleged that:

   *   Dominick's "possessed, operated and controlled a food store and adjacent parking lot" at 3300 West Belmont;

   *   Dominick's was aware of gang activity and other criminal activity in the past near that store, including "armed robberies, assault and batteries, car jackings, narcotic sales and incidents of gang graffiti;"

   *   on the day in question, two individuals, who were members of a local gang, "confronted and threatened" plaintiff Ramirez while inside the Dominick's store;

   *   these two gang members were carrying "a loaded handgun" inside the store at that time; and

   *   these two gang members followed Ramirez into the parking lot area, "where they continued to confront and threaten" plaintiff Ramirez and plaintiff's decedent, Mustafov, ultimately resulting in the shooting.

¶ 24   In count IV, which adopted those allegations, Gallo alleged the following against Dominick's:

   "16. That it then and there became the duty of [Dominick's] to ensure the safety of their patrons and invitees.

17. That in addition, [Dominick's] voluntarily assumed the duty to provide safety and security services to its patrons and invitees by hiring [specific security companies, also named defendants] to provide security services and retained supervision and control over these security companies.

18. That [Dominick's] breached its duty of care in one or more of the following particulars:

a. Negligent and carelessly hired one or more security contractors when it knew or should have known the security contractors had been disciplined and/or were on probation with the Illinois Department of Professional Regulation for failure to properly license and train its employees;

b. Negligently and carelessly hired and continued to employ one or more of its security contractors when it knew or should have known that the security contractors failed to obtain the proper licensing from the State of Illinois;

c. Negligently and carelessly hired one or more security contractors when it knew or should have known that the security contractors and their employees lacked the appropriate training, experience, registration cards and equipment to protect store patrons and invitees;

d. Negligently and carelessly failed to warn its patrons and invitees of ongoing gang activity within the store premises and parking lot when it knew or should have known of the numerous prior criminal and gang activities that occurred on the aforesaid premises;

e. Negligently and carelessly failed to properly supervise security operations within the store and parking lot; and

> f. Otherwise negligently and carelessly failed to protect store patrons and invitees when they knew or should have known of prior gang and criminal activities taking place at the store location and parking lot."

¶ 25    The other plaintiff, the surviving victim Ramirez, pleaded the identical allegations against Dominick's in count XI.

¶ 26    As shown above, the plaintiffs asserted two different theories of liability against Dominick's. The first, as alleged in paragraph 16 of the complaint quoted above, was a straight premises-liability theory, based on Dominick's status as the owner or occupier (in this case, occupier or lessee) of the premises.

¶ 27    A duty of care, owed by an owner/occupier of land to entrants onto the land, is imposed by law from two sources. First, that duty has always been imposed at the common law. See *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 141 (1990) (discussing "the scope of the landowner's or occupier's duty owed to entrants upon his premises" at common law). As lessee of the property, Dominick's " 'acquire[d] an estate in the land, and bec[ame] for the time being both owner and occupier, subject to all of the responsibilities of one in possession, to those who enter upon the land and those outside of its boundaries.' " *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 221 (1988) (quoting Prosser and Keeton on the Law of Torts § 63, at 434 (W. Page Keeton *et al.* eds., 5th ed. 1984)). Though a landowner typically owes no common-law duty to protect others from criminal activity on its land, a "special relationship" imposing such a duty "has been recognized where the parties are in a position of *** business invitor and invitee." *Id.* at 215-16. The Gallo complaint alleged that relationship.

¶ 28    That legal duty is also imposed under the Premises Liability Act. See 740 ILCS 130/2 (West 2014) (providing that duty owed "by an owner or occupier of any premises" to entrants

onto premises "is that of reasonable care under the circumstances"); see also *Ward*, 136 Ill. 2d at 142 (noting that Premises Liability Act made only modest changes to common law, primarily abolishing distinction between legal duty owed to "invitees" versus "licensees").

¶ 29     The second theory alleged, as indicated in paragraph 17 of the complaint quoted above, was a theory of voluntary undertaking—that Dominick's voluntarily assumed a duty to protect patrons and invitees by hiring security companies to patrol the parking lot. See *Wakulich v. Mraz*, 203 Ill. 2d 223, 241 (2003) (voluntary undertaking is assumption of duty of ordinary care not otherwise imposed by law). That duty is not imposed by law; it is one that a defendant voluntarily assumes and must do with reasonable care. See *id.* at 241-42; *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 209-10 (1979) (though housing authority "had no independent duty to protect against criminal acts on its premises," it could be held liable for negligent performance of voluntary undertaking); *Lavazzi v. McDonald's Corp.*, 239 Ill. App. 3d 403, 408-09 (1992) (though defendant had "no independent duty in Illinois or at common law," "[l]iability can arise from the negligent performance of a voluntarily undertaken duty"); *Jackson v. Hilton Hotels Corp.*, 277 Ill. App. 3d 457, 467 (1995) ("A duty may be imposed upon defendants who would otherwise not owe a duty where they have undertaken to perform some act and have done so negligently."), *abrogated on other grounds by LaFever v. Kemlite Co.*, 185 Ill. 2d 380 (1998).

¶ 30     We now compare those allegations in the complaint to the relevant language in the insurance policy. A truncated version of what we quoted in more detail above provides the relevant language regarding the coverage Dominick's would be provided as an additional insured on the Kennedy policy:

> "Such person or organization is an additional insured only with respect to *liability arising out of:*
>
>> a. Your ongoing operations performed for that person or organization; or

b. *Premises or facilities owned or used by you*. ***" (Emphasis added.)

¶ 31    It is undisputed that the reference to "you" is to Kennedy Plaza. It is also undisputed that the plaza property—the property on which the Dominick's store rested, as well as the parking lot—were owned by Kennedy Plaza, and that the additional-insured coverage of Dominick's extended to both the store and parking lot.

¶ 32    Dominick's argues that Netherlands owed a duty to defend under either prong listed in the policy—clause a, for liability "arising out of" Kennedy Plaza's "operations" performed for Dominick's, or clause b, for liability "arising out of premises" or facilities owned by Kennedy. We will focus first on the clause, clause b.

¶ 33    In determining whether Netherlands had the duty to defend this lawsuit on behalf of Dominick's based on this clause b, the question is whether either theory of recovery asserted in the Gallo complaint could be potentially interpreted as imposing "liability" on Dominick's "arising out of [the] premises."

¶ 34    We begin by noting that "Illinois courts have held that the phrase ' "arising out of" [in an insurance policy] is both broad and vague, and must be liberally construed in favor of the insured.' " *Burlington Northern Ry. Co. v. Illinois Emcasco Insurance Co.*, 158 Ill. App. 3d 783, 787 (1987) (quoting *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 154 (1984)); see also *Illinois Founders Insurance Co. v. Smith*, 231 Ill. App. 3d 269, 275 (1992) (same); *Dash Messenger Service, Inc. v. Hartford Insurance Co.*, 221 Ill. App. 3d 1007, 1012 (1991) (same); *Consolidated R. Corp. v. Liberty Mutual Insurance Co.*, 92 Ill. App. 3d 1066, 1068-69 (1981) (same). When that language has been found in an additional-insured policy, it has been interpreted in favor of coverage. See *Burlington Northern*

*Ry. Co.*, 158 Ill. App. 3d at 787; *Maryland Casualty Co.*, 126 Ill. App. 3d at 154; *Consolidated R. Corp.*, 92 Ill. App. 3d at 1068-69.

¶ 35    The phrase " '[a]rising out of' has been held to mean 'originating from,' 'having its origin in,' 'growing out of' and 'flowing from.' " *Maryland Casualty Co.*, 126 Ill. App. 3d at 154 (quoting *Western Casualty & Surety Co. v. Branon*, 463 F. Supp. 1208, 1210 (E.D. Ill. 1979)). Other synonyms include " 'connected with' or 'incidental to.' " *Consolidated R. Corp.*, 92 Ill. App. 3d at 1069 (citing *Lynch Special Services v. Industrial Comm'n*, 76 Ill. 2d 81, 86 (1979)).

¶ 36    The word " 'liability' " means " 'the quality or state of being liable,' " and " '[l]iable' " is defined as " 'bound or obligated according to law or equity.' " *Young v. Allstate Insurance Co.*, 351 Ill. App. 3d 151, 158 (2004) (quoting Webster's Third New International Dictionary 1302 (1993)). "Liability" is a broad term, the condition of being legally responsible to a plaintiff, based on the relevant law and facts, usually resulting in monetary damages, sometimes injunctive relief. In the context of a personal-injury claim such as in the Gallo litigation, a defendant is "liable" in tort for personal injuries suffered by a plaintiff if the plaintiff can prove that the defendant owed plaintiff a duty of care, that the defendant breached that duty, and that the plaintiff suffered injuries that were proximately caused by the breach of duty. *Buerkett v. Illinois Power Co.*, 384 Ill. App. 3d 418, 422 (2008).

¶ 37    With these general principles and definitions in mind, as we will explain below, we believe that the allegations in the Gallo complaint triggered Netherlands's duty to defend for two reasons.

¶ 38                                  1. Premises-Liability Theory

¶ 39    As discussed previously, one of the theories of recovery alleged in the complaint was a premises-liability claim. The sixth amended complaint alleged that the plaintiffs were invitees

who entered the Dominick's store; two armed individuals (at least one of them was armed) confronted and threatened Ramirez inside the Dominick's store proper; the individuals then followed Ramirez out of the store into the parking lot; and they shot Mustafov fatally and wounded Ramirez. Based on the fact that Dominick's "possessed, operated and controlled a food store and adjacent parking lot," plaintiffs alleged that "it then and there became the duty of [Dominick's] to ensure the safety of their patrons and invitees."

¶ 40    In our view, the premises-liability theory fell within the coverage language for "liability arising out of [the] premises." The sole basis for imposing a legal duty on Dominick's under this premises-liability theory was its relationship to the "premises"—its status as the occupier of the property, on whom both the common law and the Premises Liability Act impose a duty of care. See 740 ILCS 130/2 (West 2014); *Ward*, 136 Ill. 2d at 141. The "premises" is thus directly and indispensably tied to the alleged legal duty on the part of Dominick's in this case, and duty is a required element of its ultimate "liability" to the plaintiffs in the Gallo litigation. See *Buerkett*, 384 Ill. App. 3d at 422 (duty is required element of negligence claim).

¶ 41    Liberally comparing the policy against the complaint, we do not find it unreasonable in the least to conclude that the "liability" of Dominick's in the Gallo litigation has "its origin in," is "growing out of," is "flowing from" (*Maryland Casualty Co.*, 126 Ill. App. 3d at 154) or is "connected with" or "incidental to" (*Consolidated R. Corp.*, 92 Ill. App. 3d at 1069) the premises. Because it is a reasonable interpretation favoring coverage, it is one we must adopt. The allegations of the premises-liability theory thus fell within the coverage provision for "liability arising out of the premises."

¶ 42    We find support for our conclusion in the only case cited by the parties involving this identical policy language, and which also occurred, as here, in the context of an additional-

insured provision. In *Consolidated R. Corp.*, 92 Ill. App. 3d at 1067, Consolidated Rail (Con Rail) leased to its subsidiary, Pennsylvania Truck Lines (PTL), a parcel of land known as Roselake Yards, where PTL would perform various services to assist Con Rail's "piggyback" operation. PTL procured liability insurance and named Con Rail as an additional insured. *Id.* The policy provided, in serial endorsement 4, that Con Rail was an additional insured " 'only with respect to [its] *liability arising out of* \*\*\* (b) *the premises* owned, maintained or controlled by [Con Rail]' " (Emphases added.) *Id.* at 1068.

¶ 43    Eleven PTL employees were injured while working on that piggyback operation on or near the Roselake Yards property, and each of them sued Con Rail for personal injuries. *Id.* at 1067. Con Rail tendered the defense of the suits to its insurer, which assumed the defense of the first two lawsuits but refused to defend others. *Id.*

¶ 44    This court held that the insurer had a duty to defend under provision (b) quoted above (as well as other provisions). The court noted the broad interpretation that courts have given to the language "arising out of" and reasoned that "[e]ach injury was 'incident to' work related duties 'connected with' the Roselake premises owned by Con Rail." *Id.* at 1069. The court found that "this causal connection alone is sufficient to invoke coverage" under provision (b). *Id.* The court found that each of the underlying personal-injury complaints "alleged facts which were potentially covered by" provision (b), because "[t]hey asserted Con Rail's status as lessor of the yards in which the injuries occurred." *Id.* at 1070.

¶ 45    Just as Con Rail was alleged to be responsible by virtue of its status as lessor/owner for injuries occurring on or near the premises, so too was Dominick's alleged to be responsible in the Gallo complaints for acts occurring on the premises it occupied.

¶ 46    The decision in *Maryland Casualty Co.*, 126 Ill. App. 3d 150, which Dominick's emphasizes as a decision involving "liability arising out of" language, also supports our decision, though the relevant policy language was somewhat different. There, Chicago and North Western Transportation Co. (CNW) managed a train station in downtown Chicago and leased three separate newsstands to Demos News, Inc. (Demos). *Id.* at 152. A Demos employee, reporting to work early in the morning, was grabbed from behind as she was about 10 feet from her employer's door, whereupon she was dragged into a stairwell, knocked unconscious, and sexually assaulted. *Id.* She sued CNW for negligently maintaining and controlling the terminal. *Id.*

¶ 47    CNW was an additional insured under a CGL policy Demos purchased that covered CNW " 'only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to [Demos].' " *Id.* at 153. The insurer sought a declaration that it had no duty to defend CNW in the underlying lawsuit, arguing that the sexual assault did not occur on any of the premises leased to Demos. *Id.* at 154.

¶ 48    The court first noted the breadth and vagueness of the phrase "arising out of" and reasoned that, liberally construed, it suggested only " 'but for' causation, not necessarily proximate causation," between the words it connects. *Id.* The court also noted that the word "premises" has been held to include " 'private approaches and other areas necessary or incidental to an insured's operations.' " *Id.* at 155 (quoting *Allstate Insurance Co. v. Gutenkauf*, 103 Ill. App. 3d 889, 894 (1981)). Ultimately, the court held that, "by construing the policy liberally in favor of the insured—a procedure necessitated by the ambiguity of the 'arising out of' language—the instant injuries appear to have arisen from the operation and use of the leased premises, since they would not have been sustained 'but for' the victim's employment on those

premises" and the fact that she was "about to commence her employer's operation when she was assaulted." *Id.* The court found it foreseeable that "employees of Demos would necessarily and customarily use the nonleased portions of the terminal in order to go about their employer's business." *Id.* at 154.

¶ 49    *Maryland Casualty Co.*, which broadly interpreted the phrase "liability arising out of the premises," is consistent with our holding here. Netherlands is quick to point out that the language there was different, which is correct, but it cuts in a different direction than Netherlands would advocate. The language in *Maryland Casualty Co.* was " 'liability arising out of the *ownership, maintenance or use* of that part of the premises.' " (Emphasis added.) *Id.* at 153. It was narrower, not broader, than the language we are considering, which contains no similar qualifier—"liability arising out of the premises." So if anything, the difference in policy language in *Maryland Casualty Co.* provides greater, not less, support for our conclusion.

¶ 50    Netherlands raises several reasons why our interpretation of "liability arising out of the premises" is incorrect, which we will consider in turn.

¶ 51    First, Netherlands raises what amounts to a floodgates argument—that this interpretation would lead to "nearly unlimited" coverage. "Conceivably," says Netherlands, "Dominick's might fire an employee in the parking lot," "might discriminate against a customer based on race or age" there, or "might wrongfully use someone's logo" on the premises—and all of those acts, under this interpretation, would be covered under the policy.

¶ 52    Not so. In fact, these examples provide the perfect frame of reference for why the interpretation we adopt is reasonable. In those examples given above, even if those events happened to *occur* on the "premises," the "liability" of  Dominick's for those acts would have nothing whatsoever to do with the premises. A claim for wrongful termination would not base

"liability" on the premises at 3300 West Belmont Avenue but, rather, on the store's status as an employer and its violation of some state or federal employment law. It would make no difference, from a "liability" standpoint, whether a Dominick's official fired the employee inside the store, in the parking lot, at a coffee shop down the street, by e-mail, or at a visit to the employee's home.

¶ 53    If Dominick's misappropriated another company's logo, any "liability" it might incur would not be imposed by virtue of its status as owner/occupier of the premises, but rather on the fact that it misused a logo in violation of some law governing misappropriation or infringement. That misappropriation could happen in a television commercial, in a mailer, or on a poster stapled to a tree several miles away from a Dominick's store—the location would make no difference on the question of liability.

¶ 54    But a premises-liability claim is based on nothing more than the relationship of Dominick's to the premises as the owner or occupier, and the legal duties that arise as a result. The "premises" is a necessary and indispensable part of the liability alleged. So we do not think that our interpretation—that a premises-liability claim falls within the phrase "liability arising out of the premises"—is so open-ended that any conceivable lawsuit brought against Dominick's would be covered by Netherlands.

¶ 55    Netherlands also argues that "the phrase 'arising out of the premises' in an insurance policy means that the loss occurred due to some defect in the premises," and because no such defect was alleged regarding the premises here, the complaint did not implicate coverage. That was the circuit court's reasoning, too—that a defect in the premises is required.

¶ 56    Reading "liability arising out of the premises" as requiring a defect in the premises is not an unreasonable interpretation, at least in a vacuum. The problem for Netherlands is that if we

find our interpretation reasonable, and it favors coverage, it is the interpretation we must adopt, even if the insurer proffers a reasonable interpretation of its own that denies coverage. See *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 74; see also *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09 (1992).

¶ 57    In any event, we disagree with Netherlands and the circuit court that Illinois law interprets "liability arising out of the premises" as *only* referring to defects in the premises. Netherlands cites cases in support of that position, two of which the circuit court cited, but we find those cases distinguishable, as they involved different language in different kinds of policies under different circumstances.

¶ 58    In *Reis v. Aetna Casualty & Surety Co.*, 69 Ill. App. 3d 777, 780 (1978), an employee named Phillips allegedly consumed alcohol and prescription drugs at the home of Reis, a superior at the corporation, and later reported to work intoxicated. Recognizing his intoxication, Reis sent Phillips home. *Id.* On the drive home, Phillips's car collided with another car, killing plaintiff's decedent. *Id.* at 781. The estate sued Reis for allowing Phillips to consume drugs and alcohol before work and for negligently sending him home from work when he was unfit to drive a car. *Id.* at 780-81. Reis tendered her defense to her homeowner's insurer, Aetna, which disputed coverage. *Id.* at 781-82.

¶ 59    The vast majority of the *Reis* opinion was devoted to a different issue than ours—whether an exclusion for "business pursuits" applied, given that the negligence allegedly occurred, at least in part, at Reis's place of business. See *id.* at 786-88. Once this court rejected that argument, it proceeded to the question relevant to us, the applicability of an exclusion whose language was never quoted verbatim in the opinion, something this court discussed in one paragraph, the entirety of which follows:

"The insurer belatedly has raised the contention that an exclusion of liability coverage and medical payments coverage, *where the bodily injury arose out of any premises other than an insured premises*, limits coverage to Reis's apartment. The inconsistency of this contention is demonstrated by the fact that the policy expressly provides medical payments coverage for accidents *on the insured premises or elsewhere*. The cited exclusion only applies to injuries arising out of the premises themselves, presumably such accidents as falling glass. The injury here did not arise out of any premises and the exclusion is clearly inapplicable." (Emphases added and in original.) *Id.* at 788.

¶ 60 As that paragraph demonstrates, the court in *Reis* was required to reconcile the broad coverage language for accidents "on the insured premises or *elsewhere*" (emphasis in original) (*id.*) with the exclusion of coverage that, apparently, excluded coverage "where the bodily injury arose out of *any premises other than an insured*" (emphasis added) (*id.*). Since the phrase "the insured premises or elsewhere" quite obviously covered locations beyond the insured premises itself, some sense had to be made out of the exclusion, which arguably, and contradictorily, limited coverage only to the insured premises. If the exclusion were read as broadly as Aetna urged, the exclusion would have altogether erased the words "or elsewhere" from the policy's broad coverage provision. Thus, in an effort to reconcile the exclusion with the coverage language, the court determined that the exclusion language must be read narrowly to only cover situations where the noninsured premises, *itself*, was responsible for the injuries—"presumably such accidents as falling glass" on the noninsured premises. *Id.*

¶ 61 From that, Netherlands says that the phrase "liability arising out of the premises" can only mean liability resulting from a *defect* in the premises. We find *Reis* readily distinguishable in several ways.

¶ 62    First, *Reis* construed a policy exclusion, which must be interpreted narrowly, as the court there recognized and which our courts have repeatedly held. See *id.* at 787 (noting that exclusions to coverage " 'are properly construed most strongly against the insurer' "); see also *Outboard Marine Corp.*, 154 Ill. 2d at 119 (rule of construction interpreting ambiguous terms strictly against insurer and in favor of coverage is "especially true with respect to exclusionary clauses").

¶ 63    Second, as we have just discussed above, the court in *Reis* properly reasoned that the language of the exclusion, if read as the insurer urged, would have so materially altered the broad coverage language as to render it almost unrecognizable as a homeowner's insurance policy, which "is not a policy providing limited coverage only applicable on the designated premises; rather, it is designed to be a broad type of coverage protecting the insured nearly everywhere." *Reis*, 69 Ill. App. 3d at 785. In our case, in contrast, there is no other language in the policy that materially conflicts with, if not wholly contradicts, the language we are reviewing, so there is no need to harmonize seemingly incompatible provisions.

¶ 64    Third and just as importantly, the policy language in *Reis* was different. The language—not quoted verbatim by the court—apparently excluded coverage "where *the bodily injury* arose out of any premises other than an insured." (Emphasis added.) *Id.* at 788. In our case, the question is whether the "*liability* arose out of the premises." That is a meaningful difference. "Injury" is a much more specific word than "liability."

¶ 65    The notion of an *injury* arising out of the premises could reasonably, if not automatically, conjure the image of something particular about the premises, something defective about the property, playing a role in the injury. The "injury" is part of the occurrence itself. It is part of the physical sequence of events, the result of the slip-and-fall or accident or, here, the altercation that

occurred on the property. Saying that an injury "arises out of the premises" ties the "premises" to the occurrence itself.

¶ 66     On the other hand, as we discussed previously, "liability" is a far broader concept. "Liability" certainly includes the concept of an injury; a defendant cannot be held "liable" unless the plaintiff proves that he or she suffered an injury. *Buerkett*, 384 Ill. App. 3d at 422. But liability includes much more than that; it includes all of the underlying conduct and circumstances, and whether the plaintiff has proven that those facts satisfy the elements of a legal claim imposed by statute or the common law against a particular defendant. In the context before us, "liability" in tort requires that plaintiff prove not only an injury, but also the imposition of a legal duty of care, a breach of that duty, and a proximate causation between the breach of duty and the plaintiff's injuries. *Id.* A defendant's duty of care is just as essential to holding Dominick's liable as the "injury" is. In our view, if the basis for imposing a duty "arises out of the premises," as it clearly does here, that is enough to say that the "liability" of Dominick's arises out of the premises, regardless of how the injury occurred.

¶ 67     So it would not surprise us that the language "bodily injury arising out of the premises" might be read more narrowly than "liability arising out of the premises." Even if *Reis* were not otherwise distinguishable because it considered an exclusion, and because the court was required to harmonize incompatible provisions, the language *Reis* considered was materially different.

¶ 68     For the same reasons we have just given, we are not persuaded by Netherlands's citation to *Economy Fire & Casualty Co. v. Green*, 139 Ill. App. 3d 147 (1985), a case that is nearly identical to *Reis* in all material respects and, indeed, relied heavily on *Reis*.

¶ 69     There, a mother filed suit against various defendants after her child was hit by a car. *Id.* at 148. The defendants filed a counterclaim against the mother for contribution, claiming that the

mother's negligence, in whole or in part, caused the boy's injuries. *Id.* The mother tendered her defense to the insurers that issued her homeowner's policy (Badger) and her automobile liability policy. *Id.*

¶ 70    The homeowner's policy language read as follows:

" '[Badger] agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, *caused by an occurrence*.' " (Emphasis added.) *Id.* at 151.

¶ 71    Badger denied coverage, relying on the following exclusion in the policy, quite similar to the one in *Reis*: " 'This policy does not apply *** to bodily injury *** arising out of any premises, other than an insured premises, owned, rented or controlled by any Insured.' " *Id.* at 151-52. Badger argued that the child was hit by a car on the street, and thus the "bodily injury" did not "arise out of" any insured premises, and the exclusion applied.

¶ 72    This court found the exclusion inapplicable. Relying on *Reis*, the court echoed *Reis*'s reasoning that homeowner's policies are generally intended to provide liability coverage beyond the designated insured premises, "protecting the insured nearly everywhere." (Internal quotation marks omitted.) *Id.* at 152. The very broad coverage language was consistent with that norm, insuring against damages for any bodily injury " 'caused by an occurrence.' " *Id.* This court reasoned that, when a homeowner's policy contains such broad coverage language " 'and contains no other provision describing what coverage is provided, the insurer is liable for any accident for which the insured may be legally liable unless coverage is expressly excluded.' " *Id.* at 153.

¶ 73    The exclusion had the effect of severely curtailing that broad coverage provision. *Id.*
Noting that *Reis* considered "a homeowner's policy containing provisions similar to those
involved here" (*id.* at 152), the court adopted *Reis*'s conclusion, without additional commentary,
that the exclusion only applied when a bodily injury arose from a defect in the premises. *Id.* at
153. Because the child was hit by a car in the street, and no defect in the street was alleged, the
exclusion was inapplicable, and Green was entitled to coverage. *Id.*

¶ 74    For the same reasons we have distinguished *Reis*, we do not believe that *Green* guides
our decision here.

¶ 75    Like *Reis* and *Green*, another case cited by Netherlands, *Economy Fire & Casualty Co. v.
Second National Bank of Danville*, 91 Ill. App. 3d 406, 408 (1980), involved a policy exclusion
in a homeowner's policy, with the same language. The coverage language was identical to that in
*Green*, covering the insured against all liability for damages caused by an "occurrence." *Id.* The
exclusion was identical, too, excluding liability for " 'bodily injury *** arising out of any
premises, other than an insured premises, owned, rented or controlled by any Insured.' " *Id.*
Because of the difference in language, the difference in types of policies, and the fact that the
court was considering an exclusion, we again find that decision distinguishable.

¶ 76    For the reasons we have given, primarily the significant difference in policy language, we
likewise find distinguishable other case law cited by Netherlands, which turned on terms such as
"use" and "accident." See, *e.g.*, *American Country Insurance Co. v. Chicago Carriage Cab
Corp.*, 2012 IL App (1st) 110761, ¶¶ 8, 13, 26, 30 (in duty-to-indemnify action, cab driver was
not covered in negligent-entrustment suit for " ' "bodily injury" *** caused by an "accident" and
resulting from the ownership, maintenance or use of a covered "auto" ' " when driver lent cab to
his nonlicensed friend, who then picked up passenger who was beaten and robbed inside cab;

robbery inside cab was not "accident" or traditional "use" of automobile); *Mount Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care*, 343 Ill. App. 3d 309, 313-14, 320 (2003) (exclusion in policy for " ' "bodily injury" *** arising out of the ownership, maintenance [or] use' " of car did not apply, and thus insured was entitled to coverage, when car was not being "used" when child was left inside, unattended); *State Farm Mutual Automobile Insurance Co. v. Pfiel*, 304 Ill. App. 3d 831, 833, 837 (1999) (when parents' son killed girl inside their car, parents were not covered in underlying negligent-entrustment suit for "bodily injury *** caused by accident resulting from the ownership, maintenance or use of your car"; son's stabbing of girl while parked in forest preserve was not part of traditional, legitimate "use" of car, nor could murder be plausibly construed as "accident").

¶ 77    So we disagree with Netherlands and the circuit court that the case law requires a defect in the premises before a lawsuit can be interpreted as alleging "liability arising out of the premises." We think it is reasonable, at the very least, to interpret a premises-liability claim as falling within coverage for "liability arising out of the premises."

¶ 78                                    2. Unsafe Condition

¶ 79    Second, even if we were inclined to adopt some form of defective-premises requirement, as urged by Netherlands, we do not believe our conclusion would change. Netherlands casts this case as involving criminal acts of third parties, with the "premises" having no more relevance than serving as the situs of the shooting, the mere ground they stood on. But there is another way to view this case that is at least reasonable, if not more so—that both the voluntary-undertaking and premises-liability theories allege an unsafe premises.

¶ 80    Again, the Gallo complaint alleged that Dominick's had been beset in the past with "armed robberies, assault and batteries, car jackings, narcotic sales and many incidents of gang

graffiti" of which Dominick's was or should have been aware—enough so, at least, that Dominick's had hired store security. The complaint alleged that Dominick's either voluntarily undertook a duty to keep the premises safe for its patrons and invitees, or that it owed one under the common law, given its possession and control of the premises. And ultimately, what Dominick's is accused of doing is not keeping its premises safe for its patrons and invitee.

¶ 81    If a plaintiff twisted her ankle in a pothole in the lot, slipped on a patch of ice by the store, or tripped on the store's sidewalk as a result of poor overhead lighting, even Netherlands would agree that lawsuits based on these "defective" conditions would trigger coverage. What is the material difference between the premises being slippery and being unsafe? From being poorly lit versus being poorly secured? How are nonfunctioning security cameras so different than nonfunctioning overhead lights? In each of those cases, there is something hazardous about the "premises" that the owner/occupier failed to remedy, resulting in injury.

¶ 82    Viewed in this light, we do not find it unreasonable to view the allegations of the Gallo complaint, under either theory of recovery asserted, liberally construed, as alleging "liability," having "its origin in," "growing out of," "flowing from" (*Maryland Casualty Co.*, 126 Ill. App. 3d at 154), "connected with," or "incidental to" (*Consolidated R. Corp.*, 92 Ill. App. 3d at 1069) the premises.

¶ 83    For these reasons, we hold that the Gallo complaint, under either theory of recovery asserted, alleged facts that triggered Netherlands's duty to defend Dominick's.

¶ 84                                    B. Duty to Indemnify

¶ 85    Dominick's also claims that Netherlands owed a duty to indemnify Dominick's for its settlement payment to the underlying plaintiffs. The indemnification question is ripe for

determination, as Dominick's has already incurred liability in the Gallo litigation, settling the suit for $1.3 million. *Outboard Marine Corp.*, 154 Ill. 2d at 127.

¶ 86 An insurer's duty to indemnify is narrower than its duty to defend its insured. *Id.* We no longer ask whether the allegations of the complaint fall, or potentially fall, within the scope of coverage. At this stage, "the duty to indemnify arises if the insured's activity and the resulting loss or damage *actually* fall within the *** policy's coverage." (Emphasis in original.) *Id.* at 128.

¶ 87 At the time of settlement, a twelfth amended complaint was pending. The plaintiffs had upgraded some of their allegations with the benefit of discovery, including that:

* Dominick's possessed and controlled not only the premises but also the camera security system there;

* Dominick's was aware of prior criminal activity in and around its store and had a manual "to outline procedures to follow during certain criminal activities;"

* the Dominick's security staff witnessed the confrontation between the gang members and Ramirez within the store but did not intervene;

* the internal security cameras captured the two gang members entering the store;

* the cameras located on the outside walls of the store were not working;

* after the in-store confrontation, the two gang members left the store but waited outside by the doors at the southeast entrance, standing directly below one more of the nonfunctioning security cameras; and

* the gang members stood in precisely the location where the security staff was supposed to "stand post" to "monitor for suspicious activity and assist store visitors as they traveled through that entrance and the adjacent parking lot."

¶ 88   Those additions aside, the twelfth amended complaint continued to allege both voluntary-undertaking and premises-liability theories against Dominick's, and no other theories.

¶ 89   Dominick's, of course, did not admit liability when it settled, and thus obviously did not admit to being guilty of any breach of duty, much less that any duty existed in the first place, by operation of law or by voluntary assumption. But because we have found that either theory of liability would trigger coverage, there is no need to parse between covered and noncovered claims to determine which of them was the " 'primary focus' " of the lawsuit. *Rosalind Franklin University of Medicine & Science v. Lexington Insurance Co.*, 2014 IL App (1st) 113755, ¶ 81 (if both covered and noncovered claims are settled, duty to indemnify arises if covered claims were " 'primary focus of litigation' "); see also *Federal Insurance Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 288-89 (2009).

¶ 90   For all the reasons previously given, the failure by Dominick's to keep the premises safe—in violation of either its common-law duty, its voluntarily-assumed duty, or both—actually resulted in "liability arising out of the premises." Netherlands owed Dominick's a duty to indemnify.

¶ 91   In light of our holding, we do not need to decide whether Netherlands should be estopped from denying coverage.

¶ 92                              C. Section 155 Sanctions

¶ 93   Finally, Dominick's seeks damages under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2014)), claiming that Netherlands's conduct in denying them a defense and indemnification was vexatious and unreasonable. Whether conduct is vexatious and unreasonable is determined by examining the totality of the circumstances. *Rosalind Franklin*,

2014 IL App (1st) 113755, ¶ 110. "Neither the length of time, the amount of money involved, nor any other single factor taken by itself is dispositive." *Id.*

¶ 94    "[S]ection 155 fees and penalties are not awarded simply because the insurer refuses to settle or was unsuccessful in litigation." *Id.* Where there is a *bona fide* dispute concerning coverage, the assessment of costs and statutory sanctions is inappropriate, even if the court later rejects the insurer's position. *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 380 (2001); *Dark v. United States Fidelity & Guaranty Co.*, 175 Ill. App. 3d 26, 31 (1988).

¶ 95    Though we have disagreed with Netherlands's interpretation of the policy language at issue, we do not believe that its position was so unreasonable as to warrant damages under section 155. There is a difference between disagreeing with a party's position and finding that position so untenable as to be unreasonable and evidence of bad faith. We have held that Netherlands's position was too narrow to be the *only* reasonable construction of the policy, in light of the broad language "arising out of" and the broad term "liability," but it does not follow that Netherlands's position was, itself, unreasonable. The fact that an able and experienced trial judge agreed with Netherlands is further evidence that Netherlands's arguments and conduct do not warrant sanctions.

¶ 96    Thus, we need consider whether this claim was time-barred, as the circuit court ruled. Summary judgment was properly entered on this bad-faith claim, because a *bona fide* dispute over coverage existed.

¶ 97                                III. CONCLUSION

¶ 98    In sum, we reverse the grant of summary judgment in favor of Netherlands on the issues of duty to defend and duty to indemnify. We remand this cause for the entry of summary judgment in favor of Dominick's on these coverage questions. We affirm the entry of summary

judgment in favor of Netherlands on the section 155 claim. We likewise remand for any further proceedings, if necessary.

¶ 99    Affirmed in part, reversed in part, and remanded.